**Dow PRINO, Pawnbroker, d/b/a Dow's, Appellant,**

**v.**

**William E. SIMON, Secretary of the Treasury, Appellee.**

**No. 79–1073.**

United States Court of Appeals, Fourth Circuit.

Argued Aug. 20, 1979.

Decided Oct. 3, 1979.

George A. Mills, III, Huntington, W. Va. (Greene, Ketchum & Mills, Huntington, W. Va., on brief), for appellant.

James S. Arnold, Asst. U. S. Atty., Charleston, W. Va. (Robert B. King, U. S.

---

Atty., Charleston, W. Va., on brief), for appellee.

Before BUTZNER, HALL and PHILLIPS, Circuit Judges.

PER CURIAM:

The Secretary of the Treasury denied Prino's application for renewal of his license as a dealer in firearms under the Gun Control Act of 1968, 18 U.S.C. §§ 921 et seq. based upon an administrative determination that Prino had "willfully" violated the Act in several respects, a statutory ground for denial. 18 U.S.C. § 923(d)(1)(C). Prino sought judicial review under 18 U.S.C. § 923(f)(3), and the district court concluded that the application was properly denied because of willful violations.

On this appeal Prino contends that the willfulness of violation required to deny a license should be construed to be that required to support a criminal conviction;[1] that the district court did not accord *de novo* review as contemplated by the Act; and that the district court's finding of willful violations is not supported by the evidence. We find no merit in any of the contentions and affirm.

Dow Prino had operated a pawnshop and dealt in firearms and general merchandise under the style "Dow's" in Huntington, West Virginia, since 1954. In 1969 he was licensed under the Gun Control Act to deal in firearms other than destructive devices and came under the regulations of that Act. In January 1975 a special agent of the Bureau of Alcohol, Tobacco and Firearms (ATF), U.S. Department of the Treasury, conducted a compliance investigation of Prino's business. He found and reported a number of violations including, along with various technical record keeping violations, three illegal sales of hand guns to out of state residents. On February 15, 1975 Prino received a warning letter from the Regional Director ATF reciting the violations found, ordering immediate compliance with the regulations involved, advising that there would be a re-inspection within 60 days, and warning that if violations were then found his license would be revoked and that criminal sanctions were possible. The re-inspection took place on May 28, 29 and 30, 1975. Again, a significant number of violations were found, some repetitive of those first found, and the inspector also noted that a shortage of 92 firearms was reflected in Prino's records. Again Prino was advised of the specific violations found.

On the basis of his failure to comply with the cited regulations, Prino's application for annual renewal of his license was denied on July 31, 1975. Following an administrative hearing at which Prino was represented by counsel, the Secretary of the Treasury denied the application by final administrative decision. Petition for judicial review by the United States District Court for the Southern District of West Virginia was filed in December 1975, and Prino was permitted to continue his firearms business during the pendency of the review proceeding. In March of 1978, the district court entered an order in which it was concluded that the judicial review to be conducted should be a *de novo* proceeding. Accordingly, the court directed that "either party will be permitted to submit such additional evidence as they may deem relevant" and ordered that "either party shall have forty-five (45) days from the entry of this Order in which to submit by affidavit or exhibit any additional evidence." Finally, the court indicated special interest in receiving evidence concerning Prino's compliance during pendency of the review proceeding.

Pursuant to this order, another compliance inspection took place on March 31 and April 3, 1978. Again a number of record keeping violations were found, though some of the discrepancies noted in the 1975 inspection were found to have been corrected "to the extent possible." The result of this compliance inspection was presented to the district court in affidavit form for consider-

---

1. His argument is apparently that this finding could only be based upon a prior criminal conviction.

ation with the administrative record. Prino submitted counter-affidavits that tended generally to explain as inadvertent, or to show mitigating circumstances, or to refute particular ones of the last violations found, but the fact that some of the violations cited on all three inspections had indeed occurred was not disputed. Prino noted no objection to the form of the review proceeding as directed by the district court and did not seek any opportunity to introduce testimonial evidence or to cross-examine any of the persons upon whose affidavits the Secretary relied in resisting Prino's petition. Upon consideration of the administrative record and the affidavits offered in the district court proceeding, the district court concluded that the undisputed violations found to have followed the initial warning given Prino in 1975 after the initial compliance inspection were, within the meaning of the statute, "willful," and that the Secretary's denial of license application was therefore authorized by law. This appeal followed.

■ We think the standard implied by the term "willfully" in § 923(d)(1)(C) of the Gun Control Act is appropriately that held by this Court to be required to justify imposition of a civil penalty under the Occupational Safety and Health Act of 1970, 29 U.S.C. § 654(a). In *Intercounty Constr. Co. v. Occupational Safety and Health Review Comm.,* 522 F.2d 777, 779–80 (4th Cir. 1975), we defined it as follows:

> " '[W]illful' means action taken knowledgeably by one subject to the statutory provisions in disregard of the action's legality. No showing of malicious intent is necessary. A conscious, intentional, deliberate, voluntary decision properly is described as willful, 'regardless of venal motive.' "

*See also Lewis v. Blumenthal,* 590 F.2d 268, 269 (8th Cir. 1979); *Shyda v. Director, Bur. of Alcohol, Tobacco and Firearms,* 448 F.Supp. 409, 415 (M.D.Pa.1977). Applying this standard, the district court's conclusion that willful violations were established was amply supported by the evidence.

■ While the Secretary maintains on this appeal that the appropriate standard for judicial review by the district court was the familiar "substantial evidence" one, the district court instead considered itself bound to conduct *de novo* review. In doing so it considered the evidence in the administrative record plus additional evidence received in affidavit form from both parties. We think that *de novo* review is the appropriate standard. *See Rich v. United States,* 383 F.Supp. 797 (S.D.Ohio 1974); *Weidner v. Kennedy,* 309 F.Supp. 1018 (C.D.Cal. 1970). In view of the fact that Prino made no objection to the particular form of proceeding ordered by the district court, either when it was ordered or subsequently, and that he participated in it without requesting any evidentiary hearing to supplement the record or to conduct cross-examination, we hold that the procedure employed here afforded proper judicial review.

Within these principles, we conclude that the district court's findings, upon which it concluded that Prino's license was properly denied are amply supported in the record. Fed.R.Civ.P. 52(a).

AFFIRMED.