STEIN'S INC., d/b/a Harry Stein's Loan, Plaintiff–Appellant,

v.

W. Michael BLUMENTHAL, Secretary of the Treasury et al., Defendants–Appellees.

No. 79–1766.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 29, 1980.

Decided Sept. 10, 1980.

Michael J. Colgan, Milwaukee, Wis., for plaintiff–appellant.

Joseph P. Stadtmueller, Asst. U. S. Atty., Milwaukee, Wis., for defendants–appellees.

Before FAIRCHILD, Chief Judge, SWYGERT and SPRECHER, Circuit Judges.

FAIRCHILD, Chief Judge.

This is an action brought under 18 U.S.C. § 923(f)(3) to review the decision of the Secretary of the Treasury denying an application for a license to deal in firearms. The plaintiff, Stein's Inc., d/b/a Harry Stein's Loan, appeals from the district court's judgment upholding the Secretary's decision. The plaintiff argues that the district court had an obligation pursuant to 18 U.S.C. § 923(f)(3) to try the case *de novo* and that its summary disposition of the case on the basis of the administrative record and without taking additional evidence was inconsistent with that obligation. Our review of the proceedings before the district court convinces us that the district court's disposition of the cause was consistent with the statutory provision authorizing judicial review and that the district court's judgment is correct. Accordingly, we affirm.

### I.

The plaintiff, a Wisconsin corporation with its principal place of business in Milwaukee, is a pawnbroker dealing in firearms. Pursuant to the provisions of the Gun Control Act of 1968, the plaintiff must obtain from the Secretary of the Treasury a license to deal in such instrumentalities. The plaintiff did possess a license prior to 1978 and applied for the license's renewal in late 1977. The Regional Regulatory Administrator of the Bureau of Alcohol, Tobacco and Firearms on February 7, 1978, denied the plaintiff's application because of the plaintiff's repeated violations of 18 U.S.C. § 922(m), 27 C.F.R. § 178.124(c) and 27 C.F.R. § 178.125(e). The Administrator found that this pattern of violations demonstrated "a careless and willful disregard" of the gun control law and regulations justifying nonrenewal under 18 U.S.C. § 923(d)(1).[1] The notice of the Administrator's action informed the plaintiff of its right to have that action reviewed pursuant to 18 U.S.C. § 923(f)(2).

The plaintiff invoked its right to an informal hearing before a hearing officer. At that hearing, held on April 4, 1978, three inspectors for the Bureau of Alcohol, Tobacco and Firearms testified for the government. Numerous exhibits showing the results of several investigations made of the plaintiff's business over a period of several years were also introduced. This evidence established that the plaintiff had repeatedly failed to adhere to the Secretary's recordkeeping requirements. The evidence also showed that the recordkeeping requirements had been explained to the plaintiff's president, Kenneth Stein, several times but that violations persisted. The plaintiff's president testified in defense of the charges. He admitted that there had been violations, attributed them to employee error, and generally denied that the violations were willful. He also maintained that most of the violations were of technical requirements and promised that measures had and would continue to be taken to ensure that the violations would not occur.

The hearing officer in his report found that the government had established repeated violations "for relatively minor things" as well as some more serious violations. The report, however, contained no explicit findings as to willfulness. Instead, the hearing officer, apparently of the opinion that nonrenewal of the license was too severe a penalty for the infractions found, recommended that the original denial be reversed and the application be granted.[2]

---

1. 18 U.S.C. § 923(d)(1) provides that an application for a license shall be approved if

    (A) the applicant is twenty-one years of age or over;

    (B) the applicant (including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (h) of this chapter;

    (C) the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder;

    (D) the applicant has not willfully failed to disclose any material information required, or has not made any false statement as to any material fact, in connection with his application; and

    (E) the applicant has in a State (i) premises from which he conducts business subject to license under this chapter or from which he intends to conduct such business within a reasonable period of time, or (ii) in the case of a collector, premises from which he conducts his collecting subject to license under this chapter or from which he intends to conduct such collecting within a reasonable period of time.

2. The hearing officer's report states, "In my judgment, Mr. Stein appears sincere in his efforts to make the changes necessary to prevent future violations. I feel that he should be given one more opportunity to prove his intentions." During oral argument before this court, the plaintiff suggested that this was tantamount to a finding that the violations were not willful. We, however, agree with the Secretary that the hearing officer was merely suggesting that the license nonrenewal was too drastic a sanction for the violations committed. The plaintiff has not suggested in this court or the district court that the penalty, even if authorized, was unduly severe. In any event, the courts under 18 U.S.C. § 923(f)(3) may only determine whether the Secretary's decision is "authorized." Selecting an appropriate penalty for the violations found is a matter committed to the Secretary's

The hearing officer's recommendation was overruled by the Administrator. At the end of the report is the following notation, signed by the Administrator:

> I disagree with the recommendation of the Hearing Officer. My decision is that the denial of the renewal application should stand.

More formal findings denying the plaintiff's application were later prepared which incorporated the reasons specified in the Administrator's original denial. These were sent to the plaintiff along with a "Final Notice of Denial or Revocation of License" dated April 26, 1978.

The plaintiff then initiated this suit under 18 U.S.C. § 923(f)(3) in the district court.[3] The defendant responded by filing an answer and a motion for summary judgment. The motion was accompanied by a certified copy of the administrative record. The plaintiff in turn filed an affidavit of its president which denied in general terms that any of the violations were willful.

The district court granted the government's motion for summary judgment. The district court held that it was unnecessary to decide the proper standard of review because

> the uncontested evidence already in the administrative record . . . reveals that despite plaintiff's admitted knowledge of the recordkeeping requirements and the prohibition of delivery of firearms to certain individuals, it violated the law continually for about three years. . . . The failure to maintain proper records when a dealer is aware of his legal duty to do so has been held to be a willful violation of 18 U.S.C. § 923(c) [sic].

The district court held that the conclusory denials of any willful violations in the affidavit submitted by the plaintiff did not require a contrary conclusion.

## II.

The crux of the plaintiff's argument concerns the scope of and procedure for judicial review mandated by 18 U.S.C. § 923(f)(3). The government, however, has not chosen to address this issue. We believe that an orderly disposition of this appeal requires that we explore the nature of review authorized by statute before examining the particular facts of this case, and, consequently, we examine the issue here.

■ Section 923(f)(3) provides in part that the district "court may consider any evidence submitted by the parties to the proceeding. If the court decides that the Secretary was not authorized to deny the application or to revoke the license, the court shall order the Secretary to take such action as may be necessary to comply with the judgment of the court." As one court has noted, the section "is unclear and in some respects appears to contain contradictory language." *Weidner v. Kennedy*, 309 F.Supp. 1018, 1019 (C.D.Cal.1970). Some courts have held that the decision of the Secretary may be upheld if supported by substantial evidence in the administrative record. *See McLemore v. United States Treasury Department*, 317 F.Supp. 1077 (N.D.Fla.1970); *cf. Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979) (semble as to standard applied, but court noted that "substantial evidence" supported license

---

discretion. *See Nowicki v. United States*, 536 F.2d 1171 (7th Cir. 1976), *cert. denied*, 429 U.S. 1092, 97 S.Ct. 1103, 5 L.Ed.2d 537 (1977); *G. H. Miller & Co. v. United States*, 260 F.2d 286, 295 (7th Cir. 1958) (*en banc*), *cert. denied*, 359 U.S. 907, 79 S.Ct. 582, 3 L.Ed.2d 572 (1959).

**3.** 18 U.S.C. § 923(f)(3) provides:
> If after a hearing held under paragraph (2) the Secretary decides not to reverse his decision to deny an application or revoke a license, the Secretary shall give notice of his decision to the aggrieved party. The aggrieved party may at any time within 60 days after the date notice was given under this para-

graph file a petition with the United States district court for the district in which he resides or has his principal place of business for a judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding. If the court decides that the Secretary was not authorized to deny the application or to revoke the license, the court shall order the Secretary to take such action as may be necessary to comply with the judgment of the court.

nonrenewal). Other courts, however, have noted that the section permits the court to "consider any evidence submitted by the parties." Finding this phrase ambiguous, they have looked to the provision's legislative history. That history evidences Congress' intention to "provide broad judicial review" or "de novo review" of license nonrenewals and revocations. H.R.Rep.No. 1577, 90 Cong., 2d Sess., *reprinted in* [1968] U.S.Code Cong. & Admin.News, pp. 4410, 4411, 4423. Relying on that scant legislative history, those courts have concluded that the statute requires *de novo* review of the Secretary's decisions. *See, e. g., Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979); *Fin & Feather Sport Shop, Inc. v. United States Treasury Department*, 481 F.Supp. 800 (D.Neb.1979); *Service Arms Co. v. United States*, 76 F.R.D. 109 (W.D.Okl. 1977); *Shyda v. Director*, 448 F.Supp. 409 (M.D.Pa.1977); *Rich v. United States*, 383 F.Supp. 797 (S.D.Ohio 1974); *Weidner v. Kennedy*, 309 F.Supp. 1018 (C.D.Cal.1970).

We agree with the latter decisions that the statute requires *de novo* review. We do not, however, view those decisions as necessarily irreconcilable with those upholding the Secretary's decision if based on substantial evidence. This is because of our view of the nature of the review authorized by 18 U.S.C. § 923(f)(3). Although the legislative history of § 923(f)(3) speaks of "de novo review," we do not understand that history to require the district court to hold a hearing and receive evidence beyond that contained in the administrative record in every case. The language of the statute itself is permissive: "the court *may* consider any evidence submitted by the parties." (Emphasis added.) Instead we believe that Congress intended to afford the district court the discretion to receive additional evidence to be considered along with that in the administrative record when some good reason to do so either appears in the administrative record or is presented by the party petitioning for judicial review.[4] In other words, there is a difference between the "de novo review" required by 18 U.S.C. § 923(f)(3) and a "trial de novo." *Cf. United States v. Raddatz*, 447 U.S. 689, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980) (the "de novo determination" required by the Federal Magistrates Act does not always require a *de novo* hearing). We hold that while the statute requires the former, it does not in every case require the latter.[5] Considerations of judicial economy suggest that trial anew of factual matters already litigated should be avoided unless substantial doubt infects the agency's findings of fact. *See Guilday v. United States Department of Justice*, 385 F.Supp. 1096, 1098–99 (D.Del. 1974) ("In the absence of clear guidelines from Congress, it is appropriate for the courts to consider the interests of judicial economy and fairness before requiring an automatic trial de novo. To the extent that a trial de novo would require pretrial discovery and trial proof of factual background already developed in administrative proceedings, it would be unjustifiably duplicative").

Because even if the district court chooses not to receive additional evidence, its review is *de novo*, the decision of the Secretary is not necessarily "clothed . . . with any presumption of correctness or other advantage." *Weidner v. Kennedy*, 309 F.Supp. 1018, 1019 (C.D.Cal.1970). The ultimate decision as to the law and the facts remains with the trial judge. However, the district court, consistent with its obligation to review the matter *de novo*, may accord

---

4. To aid the district court in determining which factual matters might warrant the taking of additional evidence, the party petitioning for review should clearly set forth in the complaint those findings which he intends to challenge. *Cf. Trailer City, Inc. v. Board of Adjustment*, 218 N.W.2d 645, 647–48 (Iowa 1974). Moreover, the petitioner should identify in the administrative record or allege with particularity the additional facts or evidence which he regards as casting substantial doubt upon the Secretary's findings.

5. In those cases in which the trial court exercises its discretion to admit additional evidence, it may chose to receive the evidence in the form of affidavits rather than testimony, at least in those cases in which no substantial credibility questions are presented. *See Prino v. Simon*, 606 F.2d 449 (4th Cir. 1979).

the Secretary's findings such weight as it believes they deserve in light of the evidence in the administrative record and the evidence, if any, the district court receives to supplement that record. In this sense, the Secretary's decision may be upheld when the trial court concludes in its own judgment that the evidence supporting the decision is "substantial." [6]

Once the district court has reviewed the decision of the Secretary, the role of the appellate court is limited. It may review as in any other action the judgment of the district court to insure that it correctly applied the law including the appropriate scope of review. The district court's findings as to the facts, however, may not be upset unless clearly erroneous. Fed.R. Civ.P. 52(a); *see Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979). Moreover, at least arguably the appeals court may review a district court's decision not to receive additional evidence for abuse of discretion.

In summary, we hold that 18 U.S.C. § 923(f)(3) requires that the district court undertake *de novo* review of the decision of the Secretary. That review may be confined to the administrative record or may be supplemented by the admission of additional evidence. In either event, although the trial court need not accord any particular weight to the Secretary's findings and decision, it may, in the exercise of its discretion, accord them such weight as it believes they deserve. The district court's findings of fact will not be disturbed on appeal unless clearly erroneous.

### III.

Applying these standards to the present case, we find no error in the district court's entry of judgment in favor of the Secretary. The evidence before the district court

consisted of the record of the proceedings before the Secretary and the conclusory affidavit of the plaintiff's president, Kenneth Stein, denying that the plaintiff willfully violated the Gun Control Act or regulations. The administrative record contains considerable evidence of the plaintiff's repeated and consistent violation of the bookkeeping and other requirements imposed pursuant to the Act. This evidence was uncontested by the plaintiff either in the proceedings before the Secretary or in the affidavit submitted to the district court. There is simply no doubt that the plaintiff is chargeable with numerous violations to the Gun Control Act and the Secretary's regulations. The only substantial issue before the district court was, as in most actions brought pursuant to 18 U.S.C. § 923(f)(3), whether those violations were willful.

The district court correctly applied the legal definition of willfulness as that term is used in 18 U.S.C. § 923(d)(1)(C). The statute does not require bad purpose or evil motive before a license may be revoked or a renewal application denied. The Secretary need only " 'prove that the petitioner knew of his legal obligation and purposefully disregarded or was plainly indifferent to the recordkeeping requirements.' " *Lewin v. Blumenthal*, 590 F.2d 268, 269 (8th Cir. 1979) (quoting *Shyda v. Director*, 448 F.Supp. 409, 415 (M.D.Pa.1977)); *cf. Prino v. Simon*, 606 F.2d 449, 451 (4th Cir. 1979). *See also Goodman v. Benson*, 286 F.2d 896, 900 (7th Cir. 1961) ("if a person 1) intentionally does an act which is prohibited,–irrespective of evil motive or reliance on erroneous advice, or 2) acts with careless disregard of statutory requirements, the violation is willful"). Of course where, as here,

---

**6.** It is sometimes said that *"de novo"* means an independent determination by the court in which no deference is given or may be given to any prior determination of the controversy. *See United States v. Raddatz*, 447 U.S. 667, 689, 100 S.Ct. 2406, 2419, 65 L.Ed.2d 424 (1980) (Stewart, J., dissenting). *See also Weidner v. Kennedy, supra* 309 F.Supp. at 1019. Although the term may have that import, the majority opinion in *Raddatz* illustrates that the term does

not always have that meaning. *See also* 7 U.S.C. § 499g(c) (review in the district court of reparation orders of the Secretary of Agriculture under the Perishable Agricultural Commodities Act "shall be a trial de novo and shall proceed in all respects like other civil suits for damages, except that the findings of fact and order . . . of the Secretary shall be prima–facie evidence of the facts therein stated").

the licensee is a corporation, it is chargeable with the conduct and knowledge of its employees. *Finn & Feather Sport Shop, Inc. v. United States Treasury Department*, 481 F.Supp. 800, 807 (D.Neb.1979) (and cases cited therein).

■ The next question is whether the district court applied the proper scope of review. Our examination of the district court's memorandum order convinces us that the trial court in essence reviewed the Secretary's decision *de novo* and adopted as its own the Secretary's finding that the plaintiff's violations were willful. The district court recognized that courts have disagreed about the appropriate scope of review and held that under any standard the decision of the Secretary was justified. We take this, along with the district court's assessment of the evidence in the administrative record, as indicating that the court exercised its own independent judgment as to the facts and concluded that the Secretary correctly found the relevant facts.[7]

The district court's finding is amply supported by the record and we cannot say that it is clearly erroneous. The record shows that the plaintiff's agents were instructed on the requirements of the law and acknowledged an understanding of the Secretary's regulations.[8] Nevertheless, and despite repeated warnings from the Secretary, violations continued to occur. Evidence of repeated violations with knowledge of the law's requirements has been held sufficient to establish willfulness. *See, e. g., Lewin v.*

*Blumenthal*, 590 F.2d 268 (8th Cir. 1979). Although the plaintiff has attempted to dismiss those violations as "unintentional, unavoidable and *de minimis*," *see Modica v. United States*, 518 F.2d 374, 375 (5th Cir. 1975), we do not regard the evidence to that effect as so compelling as to warrant our disturbing the finding of the district court.

■ What has already been said largely disposes of the final question before us: Whether the district court abused its discretion in declining to receive additional evidence bearing on the issue of willfulness. The evidence in the administrative record showed a persistent pattern of violations even after warnings from the Secretary. The inference that the violations were willful is compelling, notwithstanding the plaintiff's president's protestations to the contrary before the hearing officer. Certainly the trial judge was free to draw the same inference that the Secretary did on the basis of the evidence in the administrative record. Moreover, the plaintiff did not offer to produce any additional evidence before the district court which had not already been considered by the Secretary. Although the plaintiff did submit an affidavit in which its president denied in general and conclusory terms that any of the violations were willful, we are not persuaded that such an affidavit established a good reason for the district court to exercise its discretion to receive additional evidence. The trial court did not abuse its discretion here.

7. It is true that procedurally this case was decided on a motion for summary judgment where technically fact finding is inappropriate and all reasonable inferences must be drawn in favor of the party opposing the motion. Nevertheless, because the procedure for review pursuant to 18 U.S.C. § 923(f)(3) permits the district court to enter judgment on the basis of the administrative record when no substantial reason to receive additional evidence is present, the practice of the courts has been to grant judgment summarily when the "material facts developed at the administrative hearing, which the court also concludes justify nonrenewal" are not substantially drawn into question by the party petitioning for review. *Mayesh v. Schultz*, 58 F.R.D. 537, 539 (S.D.Ill.1973). *See, e. g., Fin & Feather Sport Shop, Inc. v. United States Treasury Department*, 481 F.Supp. 800

(D.Neb.1979); *Shyda v. Director*, 448 F.Supp. 409 (M.D.Pa.1977). We find no substantial error with this procedure as long as the district court provides a statement of reasons sufficient to inform the parties and the appellate court of the basis of the court's decision.

8. One document in the administrative record, for example, is signed by Kenneth Stein and acknowledges that the recordkeeping requirements were explained to him and that

to the best of my knowledge and belief, I understand the laws and regulations, and will operate my firearms business in accordance therewith. If I receive a license, I understand that I am responsible for the acts or omissions of any employee or agent acting for me in the conduct of the firearms business.

## IV.

Our decision here does not deprive those denied dealer's licenses of the opportunity to have the Secretary's decisions reviewed in the courts. The district court here did review the Secretary's decision and found it authorized in law and supported by the facts. Had the plaintiff shown some good reason to do so, we are confident that the district court would have liberally exercised its discretion to permit the introduction of additional evidence. Absent such a showing by the plaintiff, however, we cannot say that the district court erred in deciding the case on the basis of the evidence in the administrative record.

The judgment of the district court is AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

The majority leaves Stein's, Inc. and others similarly situated vulnerable to capricious and arbitrary licensing decisions of the Administrator of the Bureau of Alcohol, Tobacco and Firearms without meaningful judicial review, contrary to 18 U.S.C. § 935(f)(3) and Congress's expressed intent. In the case before us, the district court should have conducted a de novo review which would have afforded Kenneth Stein, owner of Stein's, Inc., an opportunity to testify and perhaps offer other evidence on the question of intent.

Apart from the revocation of its license to deal in firearms, Stein's previously had no problems with law enforcement authorities. In May, 1974, the Bureau of Alcohol, Tobacco and Firearms discovered several violations during an inspection. In July, 1974, another inspection was conducted by Agent David Bateman. Despite finding violations, Bateman recommended renewal of Stein's license; he also gave Kenneth Stein copies of the relevant statute and regulations and explained correct procedures to him. An admonitory letter was sent.

In late October of 1975, Bateman contacted Stein prior to conducting a recall inspection and inquired about the completion of an inventory. Because Stein misunderstood Bateman's previous instructions, the inventory had not been completed. Apparently, Stein believed that the company's record books had to be approved prior to the inventory. By November 4, the inventory was completed, and the violations discovered during the previous inspection were corrected. Agent Bateman testified that, in the course of three inspections in two years, Stein and his employees fully cooperated and that they made an effort to comply with the law.

A year later Stein's was again inspected. An initial inspection occurred on November 29 and 30, 1976, and a follow-up inspection on January 7, 1977; both were conducted by Agent Michael Crump. Crump found many violations, most involving recordkeeping, although a pawned handgun was found to have been returned to "someone under twenty-one years old" in violation of 27 C.F.R. § 178.99(b). In addition, the inventory was inaccurate. Another admonitory letter was sent, but license renewal was recommended and granted. Crump testified that out of approximately one thousand firearms transactions engaged in by Stein's, only twenty-five to thirty recordkeeping violations were found. He also did not find a pattern of deceit.

Finally, in September and October of 1977, Stein's was again inspected, this time by Agent Michelle Dunn. The inspection occurred shortly after Stein's had changed locations. Stein explained that many of the admittedly numerous violations cited by Dunn resulted from the business's then-recent move and the attendant disruption of its records and inventory. Nevertheless, Dunn noted every violation she found.[1] In her zeal, she also noted a violation which later was shown not to exist. She cited a shortage in the inventory, but at the hearing, Dunn acknowledged that there actually was no such shortage. Dunn also stated that no criminal violations were found.

1. Many of the violations cited by Dunn were extremely minor. For example, if an address which was obviously in Milwaukee omitted that fact or a zip code was not shown, a violation was noted.

Agent Dunn's recommendation to deny renewal of Stein's license was accepted by Regional Administrator David Chupp. Appended to the Notice of Denial form were five typewritten pages explaining the "reasons" for the denial. More than two of the five pages consisted of quotations of the pertinent provisions of the statute and regulations. Another two and one-half pages were devoted to reciting the inspection history summarized above. Finally, the Administrator stated:

> In view of the enumerated violations, and, in particular, the recurring violations of 18 U.S.C. § 922(m), 18 U.S.C. § 923(g), 27 C.F.R. § 178.124(c), and 27 C.F.R. § 178.125(e), you have demonstrated a careless and willful disregard of the provisions of Chapter 44, Title 18, U.S.C., and the Regulations issued thereunder.

Because of the detrimental impact of this decision upon its business, Stein's invoked its right to a hearing. The hearing was held on April 4, 1978. Agents Dunn, Crump, and Bateman testified for the Government and the inspection reports and other documents were introduced. Stein's was represented by counsel and Kenneth Stein testified in its behalf.

Stein acknowledged that there were problems, especially in Stein's recordkeeping. He attributed these problems to his and the employees' misunderstanding of the law, to human error, and, as to the violations found during Dunn's inspection, to the disruption caused by the business's move. He denied that the violations were willful. Stein explained that when he noticed omissions or errors on forms completed by other employees, even if he knew the omitted or correct information, he would not alter the forms because he did not believe it correct to do so. He also indicated that steps had been taken to ensure compliance in the future. These included relieving Kenneth Stein's seventy–eight year old father and a seventy–two year old employee of any involvement with firearms transactions[2] and hiring a former Milwaukee police detective to manage Stein's firearms business.

In sum, the testimony and other proof adduced at the hearing revealed that Stein's had committed numerous violations, some more serious than others. Initially, the Administrator presumed that the violations must have been willful, because so many occurred over a long period of time despite warnings and explanations regarding correct procedures. But Stein denied that the violations were willful and offered plausible explanations for them. The agents partially supported Stein's denial of willfulness. The hearing officer concluded that license renewal was warranted.[3] Nevertheless, Administrator Chupp, without having seen and heard the testimony, was unmoved. In a hastily scrawled note, he rejected the hearing officer's recommendation for the reasons initially given. Apparently, in Chupp's mind, the presumption that the violations were willful had not been overcome.

Having exhausted its administrative remedies, Stein's invoked its right to judicial review under 18 U.S.C. § 923(f)(3). The Secretary's answer "affirmatively alleged that the decision of the Treasury . . . is supported by substantial evidence. . ." The Secretary then moved for summary judgment, relying on the administrative record and his answer. In opposition, Stein's submitted the affidavit of Kenneth Stein, who generally denied that the violations were willful. The district court granted summary judgment in favor of the Secretary.

In its memorandum, the district court alluded to the split in authority regarding the appropriate standard of judicial review under section 923(f)(3), but purported to find it unnecessary to decide whether the

---

**2.** Apparently, these two persons experienced the most difficulty with the required forms.

**3.** One can only speculate whether this recommendation was based upon a finding that the violations were not willful. On this point the record is unclear. The majority's assertion that the hearing officer's recommendation was based upon his belief that nonrenewal "was too severe a penalty for the infractions found . . . ," is, however, equally speculative.

"substantial evidence" test or de novo review was appropriate. The majority is convinced that de novo review was undertaken. *See* majority opinion at 468. The district court apparently applied the "substantial evidence" test, however, as evidenced by the district court's conclusion that "substantial evidence exists in the record supporting the finding of a willful violation ...." The fact that this case was decided on summary judgment is additional evidence that the wrong test was applied, because in this circuit substantial evidence is a question of law, appropriately decided on summary judgment. *Milton v. Harris*, 616 F.2d 968, 975 (7th Cir. 1980) (*per curiam*). Moreover, the district court refused to accept additional evidence only because Stein's failed to overcome the substantial evidence supporting the Secretary's decision.[4] This violated the applicable law because in so doing the district court viewed the administrative decision as presumptively correct.

Neither the district court nor the Secretary heard testimony but characterized the evidence in the administrative record as "uncontroverted." As discussed above, however, Kenneth Stein offered plausible explanations for the violations which were supported partially by the agents. These explanations were disregarded. The only reasonable basis for so doing must have been a determination that Kenneth Stein was not a credible witness. Thus, the district court's conclusion that summary judgment was appropriate because credibility was not at issue was incorrect. Credibility is precisely what was and remains at issue. In this regard, the fact that the hearing officer, who was the person who heard Kenneth Stein's testimony, recommended license renewal is most significant. At the very least, the district court was required to explain its "findings" in the light of all the evidence, including Stein's testimony.

In conclusion, if the appropriate standard of review were the "substantial evidence" test, the district court's disposition of this case would have been correct. Similarly, even on de novo review, the obligation to hear live witnesses might have been abrogated if Stein's had not come forth with plausible explanations for the violations. *See, e. g., Mayesh v. Schultz*, 58 F.R.D. 537 (S.D.Ill.1973). But, because Stein's did offer explanations, the rejection of which could only have been because of credibility determinations, the district court was obliged to make those determinations itself. Otherwise, the requirements that the violations be willful and that judicial review be de novo are meaningless. This court may not substitute considerations of judicial economy for those requirements. This case illustrates the reason the requirements were enacted by Congress and the abuses which result when they are not satisfied.

I would reverse and direct the district court to conduct a de novo review, including an evidentiary hearing, in accordance with 18 U.S.C. § 923(f)(3).

---

4. Although Kenneth Stein's affidavit was conclusory, the administrative record was before the district court. Stein's was entitled to rely upon it, at least to the extent that the Secretary did so. Thus, the district court's refusal ultimately could not have been based upon the inadequacy of Stein's affidavit.