**ARMALITE, INC., Petitioner,**

v.

**Marcia F. LAMBERT, Respondent.**

**No. 3:06 CV 2929.**

United States District Court,
N.D. Ohio,
Western Division.

Sept. 27, 2007.

David M. Buda, Sr., Fry & Waller, Columbus, OH, Richard E. Gardiner, Fairfax, VA, for Petitioner.

Robert G. Young, Office of the U.S. Attorney, Toledo, OH, for Respondent.

## MEMORANDUM OPINION AND ORDER

JACK ZOUHARY, District Judge.

### BACKGROUND

Petitioner filed a Petition for Judicial Review (Doc. No. 1) of the revocation of a firearms dealer license alleging revocation was improper because his actions were not willful. The case was referred to Magistrate Judge Armstrong for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). Respondent Marcia Lambert, the Director of Industry Operations, Columbus Field Division, Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), filed a Motion for Summary Judgement (Doc. No. 7) and Petitioner filed an opposition (Doc. No. 17). In her Report and Recommendation (Doc. No. 28), the Magistrate Judge recommended the Court grant Respondent's Motion for Summary Judgment and dismiss the case.

The case is now before the Court on Petitioner's Objections to the Magistrate's Report and Recommendation (Doc. No. 31), to which Respondent filed an opposition (Doc. No. 34). In accordance with *Hill v. Duriron Co.*, 656 F.2d 1208 (6th Cir.1981) and 28 U.S.C. §§ 636(b)(1)(B) and (C), this Court has made a *de novo* determination of the Magistrate's findings. For the following reasons, the Court finds Petitioner's Objections not well taken.

### DISCUSSION

Petitioner raises the following Objections to the Magistrate's Report and Recommendation:

1. the Magistrate accepted certain statements of fact which were actually disputed;

2. the Magistrate failed to properly apply the meaning of "willfully" with respect to the Gun Control Act of 1968(GCA); and

3. the Magistrate mistakenly determined that the ATF had authority to promulgate rules and regulations under the GCA

Each objection is addressed below.

### 1. No material facts are in dispute and summary judgment is proper

Petitioner objects to the determination that there is no dispute in material facts and argues summary judgment is, therefore, inappropriate.

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." "Material facts are only those facts that might affect the outcome of the action under governing law." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995).

Petitioner argues two purported facts are at issue: (1) Petitioner "failed to follow-up" regarding a conference with the ATF, and (2) Petitioner admitted being "overly complacent" about the regulations. Petitioner claims he was not responsible for following-up with ATF to schedule a conference, and points to Record evidence of confusion between the parties. Petitioner's deposition transcript also shows the Magistrate misstated in her Report that Petitioner was "overly complacent" when Petitioner actually used the language "somewhat complacent." Although a dispute exists over the exact sequence of events and responsibilities of the parties with respect to the conference, and the descriptive term used to describe Petitioner's admitted complacency, these differences are not material and have no effect on the legal outcome. Petitioner's license was not revoked for failing to schedule a conference with ATF, and the subsequent violations were not a result of the missed conference. Rather, the license was revoked because of repeated record viola-

tions. Petitioner stated that he was complacent (Doc. No. 34, n. 5), and the actual degree of complacency between "overly" and "somewhat" is also not material to the license revocation. Summary judgment is appropriate because no material facts are in dispute and Respondent is entitled to judgment as a matter of law.

## 2. Petitioner wilfully violated the GCA

Petitioner objects to the Magistrate's finding that the definition of "willfully" is governed by the Sixth Circuit decision in *Appalachian Res. Dev. Corp. v. McCabe*, 387 F.3d 461, 465 (6th Cir.2004) rather than the Supreme Court's definition in *Safeco Ins. Co. of America v. Burr*, U.S., —— U.S. ——, ——, 127 S.Ct. 2201, 2208, 167 L.Ed.2d 1045 (2007).

The Sixth Circuit has repeatedly held the term "willfully," within the GCA, does not require a showing of a bad purpose but only that a licensee knowingly failed to follow the law or be indifferent to it. *Appalachian Res. Dev. Corp.,* 387 F.3d 461, 464. Although *Safeco* sets forth a meaning of "willfully" for the Fair Credit Reporting Act, the Court does not agree with Petitioner that *Safeco* sets forth a general definition for all federal civil enforcement statutes. The holding in *Safeco* is distinguishable from Petitioner's claim. The Fair Credit Reporting Act provides a private right of action against businesses to protect consumers. *Safeco,* 127 S.Ct. at 2208. The GCA enables government enforcement of the transfer and sale of firearms, enacted to prevent weapons from reaching persons classified by Congress as "potentially irresponsible and dangerous." *Barrett v. United States,* 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). Willfully is " 'a word of many meanings' whose construction is often dependent on the context in which it appears." *Bryan v. United States,* 524 U.S. 184, 118 S.Ct. 1939, 141 L.Ed.2d 197 (1998). The Fair Credit Re-

porting Act and the GCA are vastly different statutes, in term of construction and purpose, and, as such, the meaning of willfully differs between them.

In *Appalachian Resources,* the Sixth Circuit provided a clear definition of "willfully," and then reaffirmed that decision in *Procaccio v. Lambert,* No. 06–4299, 2007 WL 1544956, at *5 (6th Cir. May 29, 2007). The Supreme Court's holding in *Safeco* is not inconsistent with *Appalachian Resources.* This Court is bound by the Sixth Circuit decision. Following established precedence, a licensee who understands his legal obligations and fails to abide by them, can have his licenses revoked for "willfully" violating the GCA. *Appalachian Res. Dev. Corp.,* 387 F.3d at 464. The Magistrate correctly analyzed the undisputed facts in her Report (Doc. No. 28, p. 11) and Petitioner did willfully violate GCA, making summary judgment appropriate.

## 3. The ATF has authority to promulgate rules and regulations, including the specific portions challenged

Petitioner objects to the Magistrate's comprehensive finding that the ATF has authority under 18 U.S.C. §§ 923(g)(1)(A) and 926(a) to promulgate rules and regulations that "are necessary to carry out the provision of the GCA ..." that requires licensed dealers to maintain certain records, and that the regulations Petitioner violated were not "necessary" under the statute.

The purpose of the GCA is "to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.' " *Huddleston v. United States,* 415 U.S. 814, 824, 94 S.Ct. 1262, 39 L.Ed.2d 782 (1974) (citations omitted). In order to effectuate that purpose,

Congress vested the right to draft rules and regulations with the Attorney General. *See* § 926. In *National Rifle Association v. Brady,* the Fourth Circuit performed an extensive analysis of the validity of certain firearm regulations promulgated pursuant to the GCA and rejected the National Rifle Association's position that the regulations were broad and unnecessary. 914 F.2d 475 (4th Cir.1990). Petitioner's objection offers no new argument for his claim that the ATF's rules are beyond the scope of the GCA, and the Court finds the reasoning in *Brady* persuasive and dispositive.

### CONCLUSION

After conducting a *de novo* review, the Report and Recommendation is adopted and affirmed. Petitioner's claims are dismissed.

IT IS SO ORDERED.

## MAGISTRATE'S REPORT AND RECOMMENDATION

VERNELIS K. ARMSTRONG, United States Magistrate Judge.

This Petition for review of Respondent's Revocation of Application for Firearms License was filed pursuant to the Gun Control Act of 1968(GCA), 18 U.S.C. § 923 *et seq.* The case was subsequently referred to the undersigned Magistrate for disposition of all pretrial issues.

Pending is Respondent's Motion for Summary Judgment (Docket No. 7), Petitioner's Opposition (Docket No. 17), Respondent's Reply (Docket No. 24) and a Notice of Supplemental Authority followed by a Response and Reply (Docket Nos. 25, 26 and 27). For the reasons that follow, the Magistrate recommends that Respondent's Motion for Summary Judgment be granted.

### THE PARTIES

Petitioner, an Illinois corporation, was issued a federal firearms license (FFL) to sell firearms other than destructive devices in its Port Clinton, Ohio, facility (Docket No. 1, ¶ 4 and Tr. 5–6).[1] Mark Westrom is Petitioner's president (Tr. 4). Respondent is the Director of Industry Operations for the Bureau of Alcohol, Tobacco and Firearms (ATF) (Docket No. 1, ¶ 5). Erica Whelan and Mark Salloun, both non-parties in this lawsuit, are Industry Operations Investigators (IOI) for ATF who were assigned to the Cleveland, Ohio, office (Tr. 12, 73).

### FACTUAL BACKGROUND

On February 21, 2006, a notice of revocation of license was mailed to Petitioner (Tr. 9 and Docket No. 1, ¶ 6). Petitioner filed a timely request for an administrative hearing (Docket No. 1, ¶ s 7 & 8). The following facts were adduced at the administrative hearing held on June 27, 2006.

In 1999, Petitioner was issued a federal license to engage in the business of dealing in firearms, including as a pawnbroker in firearms, in Port Clinton, Ohio (Tr. 6–7). The GCA and enabling regulations require gun dealers to maintain records at their place of business subject to review for compliance by the Secretary and/or Attorney General. 18 U.S.C. § 923 (Thomson/West 2007). Investigator Erica Whelan gave the licensee several days notice that she would conduct a compliance inspection of records maintained for the period July 2003 to July 2004 at the Port Clinton facility (Tr. 7, 18). Ms. Whelan conducted an inventory and inspected Petitioner's records, including the ATF Forms 4473, the transaction forms, the acquisition

---

**1.** A certified copy of the administrative record and hearing transcript were filed by the government as Docket No. 4. References to the hearing transcript, filed as Docket No. 4, Government (Gov.), Exhibit A, will be referred to as Tr. with a citation to the relevant page number.

and disposition records, theft reports and multiple sale forms (Tr. 19, 20). During the inspection, she confirmed that there were 712 firearms in the inventory and compared the acquisition/disposition record for 200 of the firearms. From her sampling, she found no discrepancies in the maintaining of acquisition/disposition inventory records (Tr. 22 and Docket No. 20, Exhibit 13). Ms. Whelan traced ten firearms that were properly recorded in the acquisition and disposition record book (Tr. 23 and Docket No. 20, Gov's Exhibit 14).

Ms. Whelan examined 111 Forms 4473 submitted by the licensee for inspection for the period July 23rd to July 25, 2003, and found twenty-four forms that had discrepancies (Tr. 24–25). She also found that for two transactions, no background investigations were conducted through National Instant Criminal Background Check System (NICS)[2] (Tr. 26–27 and Docket No. 20, Gov's Exhibit 16). Further, Ms. Whelan noted that Petitioner failed to record an identification of the three purchasers prior to selling the firearm or disposing of the firearm[3] (Tr. 28). Ms. Whelan documented six instances in which the applicants failed to submit the expiration date on their drivers' licenses (Tr. 31 and Docket No. 20, Exhibit 18). Ms. Whelan found three instances in which addresses were not verified (Tr. 33 and Docket No. 20, Gov. Exhibit 19).

During the inspection, Ms. Whelan found ten instances of incomplete Forms 4473 which omitted the date when the licensee contacted the NICS to do a background check and the response from NICS and the applicant's immigration status (Tr. pp. 35–37, Docket No. 20, Gov. Exhibit 20). There were four instances in which records of sales which did not occur were not maintained in a separate file (Tr. 38 and Docket No. 20, Gov. Exhibits 15 and 21). Ms. Whelan also examined a computerized acquisition and disposition record; however, the licensee had failed to obtain a variance from ATF for use of the computerized format. Finally, Ms. Whelan prepared a report of violations including planned corrective action which she discussed with Mr. Westrom telephonically (Tr. 40–42). August 30, 2004, was established as the deadline for compliance (Tr. 43).

The Deputy Chief of Services Division of ATF (Deputy Chief), Scott Mendoza, testified that Ms. Whelan's report was forwarded to the Respondent. A decision was made to conduct a warning conference in lieu of revocation because it was a first inspection and the licensee had been coop-

**2.** Background check. Except as provided in paragraph (d) of this section, . . . .licensed dealer (the licensee) shall not sell, deliver, or transfer a firearm to any other person who is not licensed under this part unless the licensee meets the following requirements: (1) Before the completion of the transfer, the licensee has contacted NICS; (2)(i) NICS informs the licensee that it has no information that receipt of the firearm by the transferee would be in violation of federal or state law and provides the licensee with a unique identification number; or (ii) Three business days (meaning days on which state offices are open) have elapsed from the date the licensee contacted NICS and NICS has not notified the licensee that receipt of the firearm by the transferee would be in violation of law; and (3) The licensee verifies the identity of the transferee by examining the identification document presented in accordance with the provisions of 27 C.F.R. § 478.124(c).

27 C.F.R. § 478.102 (Thomson/West 2007).

**3.** After the transferee has executed the Form 4473, the licensee: (i) Shall verify the identity of the transferee by examining the identification document (as defined in § 478.11) presented, and shall note on the Form 4473 the type of identification used.

27 C.F.R. § 478.124(3)(c)(i) (Thomson/West 2007).

erative during the inspection (Tr. 60–61). Petitioner contacted the Deputy Chief and requested that a telephone rather than an in-person conference be scheduled. After the Deputy Chief advised Petitioner that such a conference had been approved, Petitioner failed to follow-up with a date to conduct the conference; consequently, the warning conference was not held (Tr. 61–64). A decision was made to conduct a follow-up inspection in 2005 to assess the degree to which the operation had improved and the degree to which Petitioner had been compliant with the recommendations made by Ms. Whelan.

The Deputy Chief assigned Investigator Mark Salloun to conduct a follow-up inspection to assess the licensee's improvement and compliance (Tr. 64–66). Following his inspection, Investigator Salloun drafted a report listing three repeat violations from the 2004 inspection, an increase from five to 12 or 13 violations in the 2005 report and the continued failure to request a variance for maintaining computerized records. The Deputy Chief determined sufficient grounds existed for revocation of Petitioner's license based upon willful violation of the GCA (Tr. 65–67). The Deputy Director warned Petitioner, in writing, that willful violations of the gun laws could result in revocation of the firearms license (Tr. 67 and Docket No. 20, Gov. Exhibit 24).

A team consisting of Investigators Mark Salloun, Jill Krofta and Misty Morin (the team) conducted an unannounced investigation on August 2 and August 10, 2005, of the Port Clinton facility (Tr. 75–76, 78). The focus of this investigation was the time period from July 15, 2004 through August 1, 2005 (Tr. 78). The team found that there were 18 firearms located in the physical inventory but not accounted for in the records (Tr. 81, 82 and Docket No. 20, Gov. Exhibit 25). Mr. Westrom attributed this oversight to simple omissions (Tr. 85).

The team acknowledged that Mr. Westrom subsequently corrected this omission (Tr. 86).

The team further noted that Petitioner failed to transfer a firearm sold in Ohio to an Illinois resident to a federal firearms licensee in Illinois. Mr. Westrom explained that the Port Clinton facility sold a limited number of handguns and that he was unaware of the sale to an out-of-state resident (Tr. 88, 89). During its inspection, the team found 40 NICS errors, twenty-four instances of omissions on firearm transaction records and twenty-four firearm transaction records that either had date discrepancies, omissions or were improperly executed (Tr. 89–92; Docket No. 20, Gov. Exhibit 28. pp. 94–95, 101–102; Docket No. 20, Gov. Exhibits 29 & 32 and pp. 96–96, 104–106, 107–109; Docket No. 20, Gov. Exhibits 30, 33 & 34). The team discovered that Petitioner had transferred two handguns to a non-licensee within five business days without preparing a multiple AFT sale form verifying the transaction (Tr. 99; Docket No. 20, Gov. Exhibit 31).

Copies of the violation report and federal firearms regulations were provided to Mr. Westrom on August 10, 2005 and a deadline for compliance and/or corrections to be made was imposed (Tr. 113, 115). On September 12, 2005, the report of violation was amended to reflect that there were six, not seven, instances in which the Petitioner failed to timely record the disposition of a firearm in a bound book. Violation number eleven was amended, however, to reflect that there were four, not three, instances of Petitioner's failure to record the proper serial number (Docket No. 20, Gov. Exhibit 38). On September 29, 2005, Mr. Salloun amended the violation report to reflect that Petitioner failed to display the Youth Handgun Safety Act Poster and Notice and that Petitioner failed to provide a non-licensee with

notification (Docket No. 20, Gov. Exhibit 39). Mr. Westrom took corrective action to cure the problem with the NICS errors during October 2005 (Tr. pp. 93–94).

Mr. Salloun testified that he had no reason to believe that the violation involving the transfer of an handgun to an out-of-state resident was made purposefully and that he had no information that omissions on Forms 4473 were deliberate, purposeful or intentional (Tr. 124, 130). Mr. Salloun conceded that there was nothing in the regulation that required applicants to place not applicable on line 11; consequently, the eighteen violations for leaving line 11 blank were unfounded (Tr. 136 and Docket No. 20, Gov. Exhibit 32).

Judy Coulter, Petitioner's Vice President of Operations, testified that a training session was conducted for the Port Clinton operation which included, *inter alia*, instruction on how to telephone NICS and how to complete the requisite forms (Tr. 150). Her employees were specifically trained to document dates they contacted NICS (Tr. 159). She attributed the mistakes made to human error (Tr. 152).

Mark Westrom testified that errors occurred with the sale of handguns since they rarely sold them in the Port Clinton operation (Tr. 161). The overwhelming number of sales involved rifles rather than handguns. Two handguns were sold as part of an estate without having the required multiple transaction form completed. The multiple form was not processed as to the Port Clinton operation and did not have the appropriate form (Tr. 162). With respect to the bound book which must be maintained identifying receipts and disposition of firearms, Mr. Weston claimed that in July 2004, he reminded counsel, Shawn Driscoll, to apply for the variance to retain records via a computer system. Counsel advised him that the Port Clinton operation did have a variance (Tr. 163, 164). Petitioner discovered that there was no variance for the Port Clinton operation during the 2004 inspection (Tr. 164). Mark Westrom further explained that the error in the accounting for firearms in the inventory but not accounted for in the bound book was the result of booting up the wrong disk (Tr. 165). Apparently, after he entered the changes, he failed to "save" the changes (Tr. 170). The six firearm transactions that were not timely recorded could also be attributed to a failure to save changes to the disk or to the posting of the serial numbers directly from the firearm (Docket. No. 3, Gov. Exhibit A, p. 170–171). He attributed the inaccurate count in the computerized bound book to the failure to delete redundant lines (Tr. 174). Mark Westrom admitted that he was complacent about enforcing the regulations and that he was overly confident about his ability to conform to the regulations. The errors were purely accidental and not deliberately made (Tr. 176, 178). Mr. Westrom conceded that he failed to schedule a meeting in response to the warning letter or otherwise seek assistance/advice from the investigators (Tr. 189). After the hearing, Petitioner received a final notice of denial of application or revocation of firearms license (Docket No. 1, ¶ 9, Docket No. 4, Gov. Exhibit C). Petitioner filed a timely Petition for judicial review (Docket No. 1). Respondent seeks summary judgment.

### SUMMARY JUDGMENT STANDARD

The summary judgment procedure is designed to dispose of cases wherein there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. See FED.R.CIV.P. 56. Summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, with the affidavits if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.

FED.R.CIV.P. 56(c); *Copeland v. Machulis,* 57 F.3d 476, 478 (6th Cir.1995) (*citing LaPointe v. UAW, Local 600,* 8 F.3d 376, 378 (6th Cir.1993)).

The moving party bears the initial burden of establishing an absence of evidence to support the non-moving party's case. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–2553, 91 L.Ed.2d 265 (1986). In the face of Respondent's properly supported Motion for Summary Judgment, the Petitioner cannot rest on his or her allegations to get to the jury without significant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Incorporated,* 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (*citing First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). The mere existence of a scintilla of evidence to support Petitioner's position will be insufficient; there must be evidence on which a jury could reasonably find for the Petitioner. *Id.* at 2512.

To oppose a motion for summary judgment successfully, the "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). In determining if the facts are material, the court must look to the substantive law. The evidence of the non-movant is then taken as true and all justiciable inferences are drawn in his or her favor. *Anderson,* 106 S.Ct. at 2513 (*citing Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 1609–1610, 26 L.Ed.2d 142 (1970)). The Court must refrain from resolving conflicts in the evidence or making credibility determinations. *Id.* If, after deciding, the dispute about a material fact is genuine, summary judgment should be denied.

## STANDARD OF REVIEW

Upon revocation of a license to sell firearms by ATF, the licensee is entitled to an agency hearing. 18 U.S.C. § 923(f)(2) (Thomson/West 2007). The licensee may file a petition in federal courts for *de novo* review of adverse determinations of ATF's actions. 18 U.S.C. § 923(f)(3) (Thomson/West 2007). The ATF's decision and factual determinations receive whatever weight the court feels is appropriate. *Deer Hunter, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives* 2006 WL 2233451, * 1 (N.D.Ohio 2006) (*citing Stein's Inc. v. Blumenthal,* 649 F.2d 463, 467 (7th Cir.1980)). This Court's *de novo* review allows the Court to go beyond the evidence considered at the administrative hearing and to make an independent determination regarding whether the ATF decision was authorized. *Id.*

## DISCUSSION

Petitioner makes two arguments against Respondent's final notice to revoke its license. Petitioner's disregard for compliance with the regulations was an inadvertent, technical record keeping error, not a willful or intentional violation of law. In the alternative, Petitioner argues that ATF imposed a standard for recording information that goes beyond that which is imposed by statute. Respondent argues that the Petitioner admitted that it violated certain record keeping, inventory and reporting obligations. These violations were willful because Petitioner had been previously found in violation and Petitioner was advised and/or counseled with respect to his legal obligations. Petitioner still failed to comply with the advice or the regulations.

Respondent contends that Petitioner admitted to repeated violations of record keeping, inventory and reporting obligations under the GCA. During the 2004

compliance visit, Petitioner was advised of his failure to follow the rules. Some of the same violations were present during the compliance visit in 2005.

■■■■ The government may revoke a firearms license if the dealer "willfully" violates a statute or regulation governing the firearm industry. *See* 18 U.S.C. § 923(e) (Thomson/West 2007); *Appalachian Resources Development Corporation v. McCabe*, 387 F.3d 461, 464 (6th Cir.2004). Where a licensee understands his or her legal obligations under the GCA and fails to abide by those obligations, his or her license can be revoked on the basis that the licenses willfully violated the GCA. *Appalachian Resources*, 387 F.3d at 464 (*citing Al's Jewelry & Loan v. United States Department of Treasury, Bureau of Alcohol, Tobacco & Firearms*, No. 95–1765, 1996 WL 683528 at *3–4 (6th Cir. Nov. 22, 1996); *Perri v. Department of Treasury, Bureau of Alcohol, Tobacco & Firearms*, 637 F.2d 1332, 1336 (9th Cir.1981)). A showing of bad purpose is not necessary for revoking or denying a license. *Appalachian Resources*, 387 F.3d at 464–65. Disregard of a known legal obligation is sufficient to establish a willful violation. *Id.* (citations omitted).

Petitioner argues, however, that *the* ruling in *Appalachian Resources* was modified by the U.S. Supreme. in *Safeco Ins. Co. Of America v. Burr*, —— U.S. ——, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007) (Docket No. 25). Petitioner contends that *Safeco* holds that the term "willfully" when used in a statute creating civil liability, connotes knowing and reckless violations of a standard and that mere carelessness is not recklessness. Consequently, petitioner argues that the term "willfully:" as used in the GCA demonstrates a legislative intent to prohibit only knowing or reckless violations of the statutes. Petitioner views its violations of the GCA as merely careless or inadvertent.

In *Safeco*, the Supreme Court considered the Fair Credit Reporting Act (FCRA) requirement of notice to any consumer subjected to "adverse action' based in whole or in part on any information contained in a consumer credit report." *Id* at 2201. The Court interpreted "willfully fails" in the context of the FCRA requirement. The Magistrate. disagrees with Petitioner's contention that the Court intended to expand the definition of "willfully" to apply in the context of the GCA. Consequently, the magistrate finds this case to be governed by *Appalachian Resources*.

Here, the following evidence supports the Magistrate's finding that Petitioner knew of its obligation and that Petitioner repeatedly violated the GCA by (1) transferring a handgun to a non-licensee who did not reside in the State of Ohio, (2) failing to comply with the regulations by recording an erroneous date that NICS was contacted or that NICS responded, (3) failing to properly complete ATF forms 4473, (4) failing to accurately complete the manufacturer or type of firearm, (5) failing to record the correct date, (6) failing to prepare a report of multiple sale and record identification information that had expired or failing to record the expiration date in blocks, (7) failing to obtain a variance, (8) failing to enter the acquisition of eighteen firearms and record the disposition of six firearms, (9) not accurately recording serial numbers and (10) failing to make multiple entries of four firearms. The foregoing conduct by Plaintiff demonstrates that it was plainly indifferent to violating the federal gun control laws. Mark Westrom purchased the company in 1994. He had a variance for his Illinois operation. Consequently, he was aware that a variance was required for the operation at Port Clinton (Tr. 164). He discovered that he required a variance during the inspection in July 2004 (Tr. 164). He

failed to obtain a variance prior to the surprise inspection in August 2005.

Even if Petitioner cured some defects by contacting NICS and complied with the Attorney General's prescribed method of record keeping, Petitioner continued to show indifference to completing the standard forms completely and accurately. Erica Whelan advised Petitioner in 2004 that signatures and descriptions of the firearms were missing from the application. Mark Salloun found similar missing items during his inspection in 2005.

The Magistrate is persuaded that Petitioner had undisputed knowledge of the law and acted purposefully and intentionally by conducting business in the Port Clinton operation contrary to law. Even when taking the facts in the light most favorable to the Petitioner, the Petitioner has not established a genuine issue of material fact to defeat summary judgment.

**Authority for ATF Regulations to Carry out GCA Provisions**

■ Armalite contends that ATF lacks authority to promulgate rules and regulations to carry out GCA provisions and challenges specific portions of the regulations. The undersigned finds the argument of Armalite unpersuasive. As pointed out by the government in its reply to Motion for Summary Judgment, § 923(g)(1)(A) grants ATF authority to promulgate regulations and provides in pertinent part:

Each licensed importer, licensed manufacturer and licensed dealer shall maintain such records of importation, production, shipment, receipt, sale or other disposition of firearms at his place of business for such period, and in such form, as the Attorney General may by regulations prescribe.

Section 926 (a) of Title 18 further grants the Attorney General authority to prescribe only such rules and regulations as are necessary to carry out the provision of the GCA and § 926(b) requires the Attorney General to give not less than ninety days public notice before prescribing such rules and regulations.

The Fourth Circuit reviewed the validity of certain firearm regulations promulgated by the Secretary of the Treasury pursuant to the GCA as amended by the Firearm Owners Protection Act (FOPA), presently codified as 18 U.S.C. § 921 *et. seq.* in *National Rifle Association v. Brady,* 914 F.2d 475 (4th Cir.1990) (*cert. denied* 499 U.S. 959, 111 S.Ct. 1580, 113 L.Ed.2d 645 (1991)).

The Court in *Brady* stated:

After passage of FOPA, the Secretary of the Treasury initiated a comprehensive review of all regulations implementing the GCA and issued temporary regulations, effective November 15, 1986, for the enforcement of the amended Act. Some of the temporary regulations were merely re-promulgations of regulations which the Secretary had issued prior to the passage of FOPA while others were new in content. On March 31, 1988, The Secretary published the regulations in their final form. *Id.* at 477–478.

The *Brady* Court rejected the NRA argument urging the court not to defer to ATF's interpretation of the GCA as manifested in its regulations and to strike down the regulations if not found strictly necessary.

The change in language in § 926 surely counsels ATF not to stray from the directive of the statute, but is not of the import that the NRA contends. The amended language, however, retains the regulatory function in the Secretary. It does not divest him of his primary role in the implementation of the legislation. ATF moreover is better equipped than the courts for such an endeavor, having the technical expertise essential to de-

terminations of statutory enforcement. *Id.* at 479 (citations omitted).

Here, Armalite challenges specific regulations. First, Armalite contends that the regulation set forth in 27 C.F.R. § 478.124(c)(3)(iv) is void and of no force to the extent that it requires the licensee to record on Form 4473 the date on which the licensee contacted the NICS and the response received other than any identification number provided by the system. Armalite contends that the licensee is only required to provide the information specified by 18 U.S.C. § 922(t)(4). The undersigned rejects such argument. This section of the statute addresses the requirement that the licensee contact the NICS before completion of the transfer of a firearm to a person not licensed under GCA. As an alternative to receiving a unique identification number from the NICS, the statute permits transfer when 3 business days have elapsed since the licensee contacted the system and the system fails to notify the licensee that the receipt of a firearm by the applicant would violate the GCA. Clearly, requiring the date when the licensee contacted the NICS is necessary for a determination of whether the licensee has waited the required 3 business days before completing the transfer. This challenge lacks merit as the undersigned views the requested information as being necessary to carry out the provisions of the GCA.

Armalite next contests the regulation requiring information requested by certain blocks on Form 4473 as not required by regulation and, therefore, not a basis for license revocation. Armalite specifically points to the absence of a regulation requiring that the licensee record the trade/corporate name and address of transferor, the transferor's Federal Firearms License Number and transferor's name or title, number of identification document, use of a non-expired driver's license or the expiration date of the identification document. In response, the government argues that completion of the contested blocks of the Form 4473 is required by 27 C.F.R. § 478.21(a) which provides:

> The Director is authorized to prescribe all forms required by this part. All of the information called for in each form shall be furnished as indicated by the headings on the form and the instructions on or pertaining to the form. In addition, information called for in each form shall be furnished as required by this part.

The undersigned finds that a direct relationship exists between the required information for Form 4473 and the agency's ability to confirm the legality of firearms transfers and to otherwise effectuate the purposes of the GCA "to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background or incompetency.'" *Huddleston v. U.S,* 415 U.S. 814, 94 S.Ct. 1262, 1268, 39 L.Ed.2d 782 (1974).

### CONCLUSION

The Magistrate finds that no genuine issue of a material fact exists and that as a matter of law Respondent was authorized to revoke the Petitioner's license to sell firearms. For the reasons described above, it is recommended that the Court grant Respondent's Motion for Summary Judgment, dismiss the Petition and term the referral.

Aug. 14, 2007.