**TRADER VIC'S LTD. an Indiana Corporation and Victor L. Reid, Sr., President Petitioners,**

v.

**Paul H. O'NEILL, Secretary of Department of Treasury Respondent.**

**No. 3:00CV0788.**

United States District Court, N.D. Indiana, South Bend Division.

Oct. 4, 2001.

Trader Vic's Ltd, [Pro se], South Bend, Nancy L Moore, Helmkamp Ellis Abraham and Demopoulos, Livonia, for Trader Vic's Ltd, an Indiana Corporation, Victor L Reid, Sr, President, plaintiffs.

Clifford D Johnson, United States Attorney's Office, South Bend, for Lawrence Summers, Secretary of the Treasury, Paul H O'Neill, Secretary of Department of Treasury, defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

This matter is before the court on the Respondent's, Secretary of Department of Treasury ("Secretary"), motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 18 U.S.C. § 923(f). For the following reasons the Secretary's motion is now GRANTED.

### I. BACKGROUND

The Petitioners, Trader Vic's Ltd. and Victor L. Reid (collectively referred to as "Reid"), seek a license to engage in the sales of firearms in South Bend, Indiana. On April 2, 1999, Reid submitted an application for a Federal Firearms License ("FFL") pursuant to 18 U.S.C. § 923. On July, 19, 1999, Reid was interviewed by the Bureau of Alcohol, Tobacco and Firearms ("BATF"), who, as the delegatee of the Secretary of the Treasury, is authorized to make the final decision on the application. Pursuant to Section 923(f)(1), Reid was given written notice of the BATF's decision to deny his application on October 19, 1999. On October 27, 1999, Reid timely appealed this decision and a hearing was set for April 19, 2000. Reid was represented by counsel at this hearing.

During that hearing, evidence was given pertaining to various regulatory infractions that occurred in the course of a compliance inspection at Reid's former firearms business, Midwest Ordnance.[1] Specifically, in September 1993, the BATF conducted a compliance inspection of Midwest's premises and its records. That inspection revealed the following violations of law:

a. Failure to record firearms dispositions in the licensee's acquisitions/dispositions book within the prescribed regulatory time frame. 27 C.F.R. § 178.125(e).

b. Failure to abide by the age restrictions for the sale of handguns: two handguns were transferred to individuals who were not 21 years of age. 27 C.F.R. § 178.99(b).

c. Failure to make appropriate entries on BATF forms 4473, Firearms Transaction Record, block 18. 27 C.F.R. § 178.121(c) and 18 U.S.C. § 922(m)

d. Attaching bayonets to SKS rifles. 18 U.S.C. § 922(r)

e. Conducting business at out-of-state gun shows. 27 C.F.R. § 178.100 (See Administrative Record ("AR"): Memorandum to Director of Industry Operations Columbus (Ohio) Field Division; Exhibit 5).

At the conclusion of that inspection Reid signed the report acknowledging that he had received a copy of these reported violations. (Id.).

The hearing officer in making his determination noted that the above cited violations were willful and described two of the most problematic violations as follows:

1. Midwest Ordnance had contacted BATF in the early 1990's in regards to SKS's rifles they were handling (Refer Government Exhibit # 7). In this correspondence is a copy of a letter BATF sent out in referencing the modifications of SKS rifles. It highlights that the "assembly of an imported SKS rifle with a folding bayonet . . is a violation of 8 U.S.C. § 922(r)" Even after the company received this information, it still continued to attach bayonets to imported SKS's in 1993.

2. The company, in its letter to BATF (Refer Government Exhibit # 6) in re-

---

1. Reid, was the president and a major shareholder of Midwest Ordnance Inc. a Michigan corporation involved in the sales of firearms.

gards to the Report of Violations, stated "it was our understanding that as owners we were liable for putting our signature in Block 18". However, whenever they did properly complete BATF 4473, Section B specifies the person completing the transfer/sale needs to sign the form. As such, when they improperly filled out Block 18, they knew it was a willful violation of the law and regulations. (See AR; Memorandum to Director of Industry Operations Columbus (Ohio) Field Division; Findings of Fact.).

The hearing officer found persuasive the fact that Reid not only signed off on the violation sheet prepared by the BATF but also sent a follow up letter stating that corrective actions had been taken to rectify the various violations. (See AR; Memorandum to Director of Industry Operations Columbus (Ohio) Field Division; See Also Exhibit 6). Furthermore, the hearing officer found unpersuasive Reid's arguments that not all cited violations were "real violations" and that other employees were responsible for some of the reported violations. (Id.). The hearing officer determined that Reid was ultimately responsible for compliance with all statutes and regulations because of his position as principal of the company and the holder of the FFL. (See Id. Findings of Fact).

In response to the two most problematic violations (Failure to make appropriate entries on BATF forms 4473 and the attachment of bayonets to the SKS rifles), Reid argues that these violations were not made willfully. First, Reid contends that either Reid or his son Victor Reid, Jr were involved in all sales transactions and therefore properly signed Block 18 of the form. Second, Reid argues that Inspector Nasuti was so unfamiliar with the regulation pertaining to the attachment of bayonets to SKS rifles that he had to call his superiors

to verify such a regulation before citing Reid with the violation. Reid submits that being cited for such a violation is ironic given the fact that Inspector Nasuti had to call the "Technology" department of the BATF to confirm that such a regulation existed. Furthermore, Reid contends that the SKS rifles with the attached bayonets were shipped directly from China with the bayonets attached prior to the inspection. However, during the hearing, Inspector Nasuti testified that another inspector, Ms. Barrels, saw someone attaching bayonets to SKS rifles. (Transcript at Pp. 30–31; 36; 1.1. 14–21). Furthermore, Inspector Nasuti testified that he witnessed several SKS rifles with bayonets attached and several separated bayonets and rifles in the shop floor area and retail area. (Transcript at P. 37; 1.1. 1–25). However, he did not personally witness any employee attaching the bayonets to the SKS rifle.

During this same time period, specifically December 1991 to February 1993, Reid and Midwest Ordnance were the subject of an ongoing criminal investigation relating to the illegal sale of firearms. (Defendant's Statement of Material Facts at ¶ 5). The alleged criminal violations ranged from the possession and sale of unregistered guns to the delivery of firearms to a "straw purchaser" who in turn sold they firearm to a convicted felon. (See Id; See also Memorandum to Director of Industry Operations Columbus (Ohio) Field Division; Exhibit 10). As a result of these allegations, Reid and the Assistant United States Attorney from the Eastern District of Michigan entered into a mutual agreement on or about October 27, 1994. As part of the agreement to not seek criminal prosecution for the various alleged violations, Reid agreed to, *inter alia*, surrender his FFL. (DSMF at ¶ 7).

The hearing officer based his decision to deny the FFL to Reid solely on his prior willful violations of 18 U.S.C. §§ 923(g)(1);

922(m)(r) as well as 27 C.F.R. §§ 178.(b)(1); 178.100; 178.121(c); and 178.125(e). The hearing officer noted that pursuant to 18 U.S.C. § 923(d)(1)(C) the Director of Industry Operations acted appropriately in denying the license application of Reid because of the willful violations.

Reid then appealed that decision to Norris Alford, Director of Industry Operations. Reid's subsequent appeal of the hearing officer's decision was denied on November 2, 2000. On December 29, 2000, Reid filed the instant action pursuant to 18 U.S.C. § 923(f), seeking review of the BATF's decision of denial below.

## II. STANDARD OF REVIEW

■ The licensing portion of 18 U.S.C. § 923(f) contemplates a de novo review of the Secretary's decision below. *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir.1980). "The Secretary's decision may be upheld when the trial court concludes in its own judgment that the evidence supporting the decision is 'substantial.'" *Id.* at 467. Furthermore, a district court has the discretion to give the Secretary's findings of fact and decision below "such weight as it believes they deserve." *Id.* at 467. This court can grant summary judgment if no genuine issues of material fact exist. See *DiMartino v. Buckles*, 129 F.Supp.2d 824, 832 (D.Md.2001), aff'd. by unpublished order *DiMartino v. Buckley*, 2001 WL 1127288 (4th Cir.(Md.) Sep 25, 2001); *Al's Loan Office, Inc. v. Bureau of Alcohol, Tobacco, and Firearms*, 738 F.Supp. 221, 223 (E.D.Mich.1990); *T.T. Salvage Auction Co. v. United States Treasury Dep't*, 859 F.Supp. 977, 979 (E.D.N.C.1994).

## A. ADDITIONAL EVIDENCE NOT PART OF THE ADMINISTRATIVE RECORD

■ The court now turns to the Secretary's contention that any evidence not part of the administrative record cannot be considered by this court absent a showing of good cause. The Secretary's reliance on *Stein's Inc.* for the proposition that such a showing be made is misplaced in light of the 1986 Amendment to 28 U.S.C. § 923(f)(3). That Amendment specifically added the following language concerning what evidence may be considered by a United States district court, "whether or not such evidence was considered at the hearing under paragraph (2)." See 18 U.S.C. § 923(f)(30) 1986 Amendments Pub.L. 99–308, § 103(6)(A). Therefore, the current language of Section 923(f)(3) specifically provides that "In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing under paragraph (2)." Recent case law bears out the impact of the 1986 Amendment of Section 923(f)(3) on what additional evidence may be considered. See *DiMartino*, 129 F.Supp.2d at 827; ("reviewing court can consider any evidence submitted by the parties regardless of whether that evidence was submitted in the administrative proceeding."); *T.T. Salvage Auction Co.*, 859 F.Supp. at 979 (same); *Al's Loan Office, Inc.*, 738 F.Supp. at 223 (same). The court is quite concerned with the Secretary's misstatement of the law with respect to this specific area. The petitioners can properly supplement so long as the evidence meets the other requirements of relevancy and admissibility under the Federal Rules of Evidence. Therefore, the court will evaluate the additional evidence submitted by Reid that was not part of the Administrative Record.

## III. DISCUSSION

In response to growing concerns involving the sale of firearms to the general

public, Congress enacted the Gun Control Act of 1968 18 U.S.C. §§ 921 et seq. (hereinafter "GCA"). Among other things, the GCA requires every person who engages in business as an importer, manufacturer, or dealer in firearms or ammunition to be properly licensed by the Secretary of Treasury. This licensing requirement is carried out under the auspices of the BATF. Federal Regulations dealing with the issuance of these federal licenses have been promulgated by the BATF and can be found at 27 C.F.R. §§ 178.41 et seq.

Congress has enacted a statute to guide both the BATF and potential firearms licensees through the process of applying for a FFL. Those statutory requirements can be found at 18 U.S.C. § 923. Specifically, 18 U.S.C. § 923(d)(1) provides that any application under this section shall be approved if certain enumerated criteria are met.[2] That application must be granted or denied within 60 days of the receipt of the application. 18 U.S.C. § 923(d)(2).

In the event that a license is either denied initially or a renewal license is denied, 18 U.S.C. 923(f) and the corresponding federal regulations provide the appropriate steps in seeking review of that decision.[3] Section 923(f) provides

---

**2.** The following seven criteria must be met before an application for license shall be approved:

(A) the applicant is twenty-one years of age or over;

(B) the applicant (including, in the case of a corporation, partnership, or association, any individual possessing, directly or indirectly, the power to direct or cause the direction of the management and policies of the corporation, partnership, or association) is not prohibited from transporting, shipping, or receiving firearms or ammunition in interstate or foreign commerce under section 922(g) and (n) of this chapter;

(C) the applicant has not willfully violated any of the provisions of this chapter or regulations issued thereunder;

(D) the applicant has not willfully failed to disclose any material information required, or has not made any false statement as to any material fact, in connection with his application;

(E) the applicant has in a State (i) premises from which he conducts business subject to license under this chapter or from which he intends to conduct such business within a reasonable period of time, or (ii) in the case of a collector, premises from which he conducts his collecting subject to license under this chapter or from which he intends to conduct such collecting within a reasonable period of time; .

(F) the applicant certifies that—

(i) the business to be conducted under the license is not prohibited by State or local law in the place where the licensed premise is located;

(ii)(I) within 30 days after the application is approved the business will comply with the requirements of State and local law applicable to the conduct of the business; and

(II) the business will not be conducted under the license until the requirements of State and local law applicable to the business have been met; and

(iii) that the applicant has sent or delivered a form to be prescribed by the Secretary, to the chief law enforcement officer of the locality in which the premises are located, which indicates that the applicant intends to apply for a Federal firearms license; and

(G) in the case of an application to be licensed as a dealer, the applicant certifies that secure gun storage or safety devices will be available at any place in which firearms are sold under the license to persons who are not licensees (subject to the exception that in any case in which a secure gun storage or safety device is temporarily unavailable because of theft, casualty loss, consumer sales, backorders from a manufacturer, or any other similar reason beyond the control of the licensee, the dealer shall not be considered to be in violation of the requirement under this subparagraph to make available such a device).

**3.** See 27 C.F.R. § 178.72 provides:

If the applicant for an original or renewal license desires a hearing to review the denial of his application, he shall file a request

that if after the hearing, the Secretary decides not to reverse his decision then the petitioner may seek further judicial review in the United States District Court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. 18 U.S.C. § 923(f)(3).

Both Reid and the Secretary concede that their administrative proceedings have been exhausted with respect to Reid's application for a license pursuant to the GCA. Furthermore, both parties concede that this court has proper jurisdiction under 28 U.S.C. § 1331 and that this court is the appropriate venue given that the petitioners principal place of business was to be South Bend, Indiana. Therefore, the court can now proceed to the merits of the petitioners underlying claims.

### A. WILLFUL VIOLATION

■ Reid was denied a FFL because of his prior willful violations of the provisions and regulations promulgated under the GCA. See 18 U.S .C. § 923(d)(1)(C). A willful violation under the GCA has been determined as one which demonstrates that a dealer knows the proper requirements and acts in contravention of them. *Stein's Inc. v. Blumenthal*, 649 F.2d 463, 467 (7th Cir.1980). "The statute does not require bad purpose or evil motive before a . . . renewal application [is] denied." *Id.*

This definition of willfulness includes an act with careless disregard of statutory requirements. See *Id.; Perri v. Department of the Treasury Bureau of Alcohol, Tobacco and Firearms*, 637 F.2d 1332 (9th Cir.1981); *Goodman v. Benson*, 286 F.2d 896, 900 (7th Cir.1961). "Any single violation of the federal statutes or regulations controlling the firearms·industry can be a basis for denying an application for a new license or revoking an existing license." *DiMartino v. Buckles*, 129 F.Supp.2d 824, 832 (D.Md.2001), aff'd. by unpublished order *DiMartino v. Buckley*, 2001 WL 1127288 (4th Cir.(Md.) Sep 25, 2001).

### 1. Bayonets on Rifles

■ Reid first argues that he did not "willfully" violate a regulation prohibiting the placement of bayonets on rifles. He asserts that he never received a form letter prohibiting such an occurrence until after the compliance inspection. Furthermore, Reid contends that the inspector was not aware of any such regulation and had to place a call to "technology" to obtain information relating to such a regulation.

However, a careful review of the evidence submitted before the administrative hearing, during the administrative hearing and the evidence submitted by Reid not included in the administrative record dem-

therefor, in duplicate, with the Director of Industry Operations within 15 days after receipt of the notice of denial. The request should include a statement of the reasons therefor. On receipt of the request, the Director of Industry Operations shall, as expeditiously as possible, make the necessary arrangements for the hearing and advise the applicant of the date, time, location, and the name of the officer before whom the hearing will be held. Such notification shall be made not less than 10 days in advance of the date set for the hearing. On conclusion of the hearing and consideration of all relevant facts and circumstances

presented by the applicant or his representative, the Director of Industry Operations shall render his decision confirming or reversing the denial of the application. If the decision is that the denial should stand, a certified copy of the Director of Industry Operations findings and conclusions shall be furnished to the applicant with a final notice of denial, Form 4501. A copy of the application, marked "Disapproved," will be returned to the applicant. If the decision is that the license applied for should be issued, the applicant shall be so notified, in writing, and the license shall be issued as provided by § 178.47.

onstrates that substantial evidence exists that this violation was committed. During the hearing, a letter was introduced that demonstrated that the BATF notified Reid of regulations dealing with the placement of bayonets on SKS rifles. Specifically, a letter dated May 22, 1992 was sent to all Federal Firearm licensees, including Midwest Ordnance, (Reid's former gun shop), which stated, *inter alia*, that "assembly of an imported SKS rifle with a folding bayonet ... is a violation of 18 U.S.C. § 922(r)." (See Exhibit 7, Hearing)

During the administrative hearing the BATF inspector, Inspector Nasuti, was specifically asked if the violations cited during the 1993 inspection were the same violations that were specifically mentioned in that notification letter.

Q: And it goes further on to say in paragraph 4 at the top, an assembly of imported SKS rifle with a folding bayonet, and it talks about folding stock and detachable magazine is a violation of 18 U.S.C., Section 922(r); correct?

A: That's correct.

Q: Is that the same subsection as you cited on violation No. 3 for Mr. Victor Reid

A: Yes it is.

Q: Okay. And again the inspection date was September 14th, 1993 that you did your actual inspection?

A: Correct.

Q: And this letter is dated May 22nd, 1992, a year before that?

A: That's correct. (See P. 27; 1.25— P. 28; 1.14).

The evidence submitted by Reid to establish that he did not have knowledge of such a violation is wholly unpersuasive. In his brief, Reid argues that he did not receive any such letter until after the compliance inspection. However, a careful examination of Reid's affidavit reveals that Reid does not refute that he had received the memo concerning the attachment of bayonets to the rifles. Rather, his statement reflects only that he again received notice of the regulation after being cited for the violation. (See Petitioner's Memo in Support, Ex. 4; ¶ 4). Reid had adequate notice of the violation concerning the prohibition of attaching bayonets to these rifles and yet failed to adequately demonstrate at any of the administrative levels that he did not receive the notice concerning such a violation.

A review of the administrative transcript reveals that Reid was neither asked nor did he offer any testimony as to his receipt of the May 22nd 1992 letter. Therefore under Michigan law it is presumed that Reid received that notification letter. *Allstate Insurance Co., v. Harris*, 2001 WL 672596 * 1 (Mich.App.2001) citing *Good v. Detroit Auto. Inter–Insurance Exchange*, 67 Mich.App. 270, 275, 241 N.W.2d 71(1976)("Upon proper evidence of business custom and habit of a commercial house as to addressing and mailing, the mere execution of a letter in the usual course of business rebuttably presumes subsequent receipt by the addressee."). Reid failed to come forward with evidence at any of the administrative levels that would rebut the presumption that he received the notification letter in May of 1992. Moreover, Reid has failed to produce any new evidence to this court that would demonstrate that he did not have notice of the regulations concerning the attachment of bayonets to the SKS rifles. Finally, Reid's failure to show that he did not receive the notice letter is further undermined by the legal premise that ignorance of the law is no excuse. *Stein's Inc.* 649 F.2d at 467. (Secretary need only " 'prove that the petitioner knew of his legal obligation ... or was plainly indifferent to the ... requirements.' "). Here Reid either knew of the bayonet violations or was plainly indifferent to the notice

requirement that was given via the May 22 letter.

Reid's argument that Inspector Nasuti was not fully aware of the regulations concerning the bayonets are similarly unavailing. Inspector Nasuti after conferring with the other individuals involved in the inspection became aware that a possible violation existed with respect to the bayonets. After further consultation with the "Technology" department in Washington, Inspector Nasuti confirmed that the attachment of bayonets to the rifles was indeed a violation of Section 922(r). As a federal firearm licensee, Reid had a duty to be cognizant of the rules and regulations issued by the Bureau of Alcohol, Tobacco and Firearms and to follow those mandates. Therefore, substantial evidence exists as to the Secretary's determination that Reid willfully violated § 922(r).

**2. Signature on Forms**

██ Next the Secretary alleges that Reid "willfully" violated a regulation that required only the person completing the sale to sign Form 4473, block 18. As referenced in the Report of Violations issued by the BATF, Midwest and Reid were cited for failing to make an appropriate entry on Form 4473, block 18. On the Report of Violations, the inspector noted that the licensee [Reid] signed this block even when he did not make the actual sale. However, the regulations provide that the salesperson responsible for the sale must sign that particular block. See 18 U.S.C. § 922(m). Reid acknowledged this violation when he signed the inspection report on September 14, 1993. (See Notice of Denial of Application of License, Exhibit 5). Thereafter on March 9, 1994, Reid sent a letter to the BATF regarding this violation. In that letter, Reid admits that sales were made at times with the help of other individuals acting as clerk. (See Notice of Denial of Application of License, Exhibit 6). Reid further states that, "it was our understanding that as the owners we were liable for putting our signature in Block 18." (Id.).

Reid now asserts that he will give testimony that will demonstrate that he or his son were personally involved in all firearms sales. (See Petitioner's Memorandum in Support, Exhibit 4). However, this assertion belies and contradicts Reid's prior statements in his letter to the BATF in March of 1994 as well as testimony given by the BATF Inspector during the appeal of his license denial. ("He [Reid] admitted to signing the majority of the forms, even when he did not make the actual transfer." Transcript at P.57; ll. 15–17). Therefore the court finds that Reid's affidavit is wholly inconsistent with his prior position that he signed the form even when he was not actually involved in the transfer of the firearm. This act constitutes a willful violation of 27 C.F.R. § 178 .121(c) and 18 U.S.C. § 922(m) as reflected by the Inspection Report dated September 14, 1993.

**B. AGREEMENT NOT TO SEEK FUTURE LICENSES**

Both parties devote a substantial portion of their briefs to the issue involving whether Reid as part of his prior agreement to surrender his FFL in 1995 with the Assistant United States Attorney agreed not to seek any future federal firearms licenses. However, this issue was not relied upon by the Hearing Officer in making his determination to deny the current license to Reid. In light of the fact that the hearing officer's decision to deny the license is supported by substantial evidence the court need not analyze whether this evidence would form a separate basis for denial of the application.

### III. CONCLUSION

For the foregoing reasons the court finds that Secretary's decision below was

supported by substantial evidence and therefore the Secretary's motion for summary judgment is now **GRANTED**. Each party to bear its own costs. **IT IS SO ORDERED.**