**WILLINGHAM SPORTS,
INC., Plaintiff,**

v.

**BUREAU OF ALCOHOL, TOBACCO,
FIREARMS AND EXPLOSIVES,
Defendant.**

No. CIV.A.04–0121–WS–C.

United States District Court,
S.D. Alabama,
Southern Division.

Dec. 16, 2004.

Peter S. Mackey, Burns, Cunningham & Mackey, Mobile, AL, for Plaintiff.

Alex F. Lankford, IV, U.S. Attorney's Office, Mobile, AL, for Defendant.

## ORDER

STEELE, District Judge.

This matter is before the Court on defendant's Motion for Summary Judgment (doc. 18). The Motion has been fully briefed and is ripe for disposition at this time.

## I. Background.

Plaintiff Willingham Sports, Inc. ("Willingham") initiated this action against the federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") seeking review of the administrative denial of Willingham's application to renew its federal firearms dealer license. Judicial review of the ATF's determination is governed by the Gun Control Act of 1968, as amended, including specifically 18 U.S.C. § 923(f).

### A. Licensure of Plaintiff and Recordkeeping Requirements.

President and sole proprietor Jimmy Ronald Willingham ("Mr. Willingham") testified at the administrative hearing that Willingham was first issued a federal firearms license, License No. 1–63–091–2D–33629 (the "License"), in 1987. (Tr. 157.) [1] Pursuant to the License, Willingham was authorized to serve as a dealer, including a pawnbroker, in firearms other than destructive devices at its facility in Demopolis, Alabama. While a licensed dealer, Willingham sold between 100 and 150 firearms per year. (Tr. 164–65.)

Mr. Willingham was fully cognizant that the License was contingent on Willingham complying with federal firearms laws and regulations. (Tr. 139.) In that regard, Willingham periodically received books, pamphlets, circulars and other literature from ATF setting forth the requirements it was bound to follow as a licensed firearms dealer. (Tr. 139–40.) Mr. Willingham acknowledged that as a federal firearm licensee, the company was charged with responsibility for knowing and understanding all applicable laws and regulations. (Tr. 140–41.)

For purposes of this action, two regulatory recordkeeping requirements are of paramount importance. First, Willingham and all other licensed firearms dealers must maintain a bound book recording the acquisition and disposition of every firearm that enters and leaves their inventory, pursuant to 27 C.F.R. § 478.125(e).[2] This book is often referred to as an "Acquisitions and Dispositions Book," or "Bound Book," for short. Second, gun dealers must ensure completion of a Firearms Transaction Record, or a "Form 4473," for each gun they sell, in order to record identifying information about the purchaser, to facilitate the tracing of firearms involved in crimes, and to prevent gun transfers to certain prohibited persons. See 27 C.F.R. § 478.124.[3] ATF maintains

---

**1.** All references to "Tr." herein refer to pages from the official transcript of the administrative hearing conducted on November 13, 2002. Exhibits from the administrative record will be denoted herein with the label "Exh. G-" followed by the number of the exhibit.

**2.** This book must include entries identifying each gun a dealer takes into its inventory, as well as entries for each gun that leaves its inventory. As an ATF inspector explained, "it is basically a log book in which the dealer is required to record the acquisition and dispositions of all firearms that come in to or go out of the business." (Tr. 34.) The purpose of the Bound Book is to assist law enforcement officials in tracing firearms. (Id.) Ac-

quisition entries must identify the gun (by manufacturer, model, serial number, type and caliber or gauge), the date the licensee received it, and the person who transferred it to the licensee. Disposition entries must also include the date the gun was transferred out of the licensee's inventory, the identity of the person taking possession of it, and the address of that person or the Form 4473 serial number associated with the transfer. See generally 27 C.F.R. § 478.125(e).

**3.** Form 4473 requires a prospective purchaser to disclose his name, sex, height, weight, race, address, and date and place of birth. The buyer must next answer a series of questions to enable the dealer to ascertain whether it may legally transfer a gun to that person.

that Willingham was repeatedly found in violation of both of these recordkeeping requirements over a series of inspections occurring in 1990, 1992, 1999 and 2001, ultimately culminating in the revocation/nonrenewal of Willingham's License.

### B. The Inspections.

In November 1990, ATF Inspector Ginger Davis conducted a compliance inspection at Willingham. This inspection revealed that the Bound Book did not reconcile with Willingham's physical inventory of firearms, and that all of the more than 500 Forms 4473 on file at Willingham contained certain omissions or errors relating to required information. (Tr. 77–78.) A Report of Violations was prepared and given to Mr. Willingham, who signed it to acknowledge receipt of same. (Exh. G–19.)[4]

In March 1992, Willingham again submitted to a compliance inspection, this one performed by ATF Inspector Karl Fleischmann ("Mr.Fleischmann").[5] Mr. Fleischmann discovered a host of recordkeeping violations, including some 27 firearms that the Bound Book listed as being on hand but that were not actually there, some 38 guns (including 12 guns submitted for cleaning or repairs) on hand that had not

been logged into the Bound Book, no listed dates of acquisition in the Bound Book for 75 firearms, and an array of errors and omissions in the Forms 4473. (Tr. 75–76 & Exh. G–18.) In view of the 1990 inspection, Mr. Fleischmann considered these observed shortcomings to be repeat or recurring violations. (Tr. 76.) Once again, a Report of Violations was prepared and Mr. Willingham signed that Report in Mr. Fleischmann's presence. (Exh. G–18.)[6]

Willingham was not inspected again until November 30, 1999. At that time, Mr. Fleischmann discovered recurring violations similar in tenor to those previously reported in 1990 and 1992. In particular, Mr. Fleischmann found that the Bound Book omitted disposition information for 130 firearms listed as being on hand that were not there, failed to show any record of 24 firearms on hand in the facility, and omitted certain acquisition information (date, source) for a number of guns. (Tr. 68–69 & Exh. G–16.) The inspection also disclosed numerous violations relating to Forms 4473, including 136 forms plagued by errors such as background check and other sections not being completed, omission of key dates (such as the date on which NICS was contacted), and dozens of instances in which Willingham failed to

The licensee is responsible for verifying the buyer's identity in the Form 4473, recording contact with NICS (National Instant Criminal Background Check System) regarding the buyer's background, and the like. By requiring the purchaser properly to complete the Form 4473 and by verifying certain information therein, the licensee helps ensure that it is not selling a firearm to a person prohibited by law from possessing a firearm (such as a convicted felon, a fugitive from justice, or the other categories identified in 18 U.S.C. § 922(d)).

4. Unfortunately, this exhibit appears to be an nth-generation copy of a carbon copy of the original Report, and its text is almost entirely inscrutable. Nonetheless, the administrative record reflects that a legible version of this

document was presented at the hearing. It is uncontroverted that the Report enumerated the recordkeeping violations discovered in November 1990 and that Mr. Willingham signed it.

5. The record reflects that Mr. Fleischmann, an ATF inspector stationed in Mobile, Alabama, has more than 30 years of experience, and has personally conducted more than 500 firearms inspections since 1977. (Tr. 15–17.)

6. This exhibit suffers from the same infirmities as its 1990 counterpart. Because of its copy-of-a-carbon-copy status, the document is illegible; however, plaintiff has at no time contested ATF's characterization of the Report's contents.

record driver's license or other acceptable ID information on the form. (Tr. 69 & Exh. G–16.) The ensuing Report of Violations was prepared by the ATF and signed by Mr. Willingham on behalf of the company. (Tr. 70 & Exh. G–16.)

As a result of the 1999 inspection, the ATF took several steps to advise Willingham that it was treading on thin ice. Contemporaneously with the Report of Violations, Mr. Willingham signed a Federal Firearms Regulations Guide Form listing numerous firearms regulations (including recordkeeping requirements). (Tr. 73 & Exh. G–17.) By signing the form, Mr. Willingham agreed that on December 2, 1999, information pertaining to those regulations was fully explained to him by an ATF inspector and that any questions he had concerning those regulations had been answered. (*Id.*) Then, on February 10, 2000, the ATF sent a document to Willingham entitled "WARNING LETTER." (Exh. G–20.) That letter reminded Willingham of the recordkeeping violations discovered in the 1999 inspection, including specifically improperly maintained Bound Book and Forms 4473, and further stated as follows:

> "You are reminded that your Federal firearms license is conditioned upon your compliance with Federal firearms laws and regulations. *Repeat violations of those listed above will be viewed as willful,* and may result in the revocation of your license."

(Exh. G–20 (emphasis added).) A certified mail return receipt reflects that Willingham received the Warning Letter on February 12, 2000.

Finally, in July 2001, Mr. Fleischmann conducted another records inspection at Willingham, where he found that many of the previously identified problems persisted. (Tr. 19.) Indeed, the 2001 inspection revealed that the Bound Book: (a) lacked disposition information for 25 firearms that were listed as on hand but were not, (b)

recited dispositions for nine firearms that were still in Willingham's inventory, (c) lacked any information (including acquisition information) about seven firearms that were on hand, and (d) lacked any information at all about three firearms that Willingham had both acquired and disposed of. (Tr. 33–34, 42, 45, 49–50, 56–57 & Exh. G–8.) The same inspection also yielded defects in Willingham's Forms 4473, including 85 forms in which buyers had answered eligibility questions in section 9 with a "Y" or an "N" even though the instructions specifically required "yes" or "no" answers; 7 forms in which the purchaser had left one or more eligibility questions blank; 27 forms in which no purchaser's identification had been recorded in box 11A; 4 forms with other errors or omissions in the buyer's personal information; and 56 forms that were improperly dated. (Tr. 58–65 & Exh. G–8.) These violations were similar to and consistent with those uncovered in the 1999 inspection, and Mr. Fleischmann regarded them as repeat violations. (Tr. 68, 72–73.)

### C. The Revocation/Nonrenewal of Plaintiff's License.

In the wake of the July 2001 inspection, the ATF issued a Notice of Revocation of License to Willingham on January 8, 2002, advising Willingham that the License was to be revoked effective 15 days thereafter. (Exh. G–1A.) The Notice also advised Willingham of its right to request a hearing within 15 days. (*Id.*) Appended to the Notice was a five-count document explaining the factual basis for the revocation. Each count conformed to a deficiency observed in the 2001 inspection, to-wit: (1) disposal of 25 firearms without recording such dispositions in the Bound Book; (2) possession in inventory of nine firearms listed in the Bound Book as having been disposed of; (3) acquisition of seven firearms without logging them in the Bound

Book; (4) acquisition and disposition of three firearms without any log entries about them in the Bound Book; and (5) errors on 123 Forms 4473. (*Id.*)

On or about January 15, 2002, Willingham sent a letter to the ATF timely requesting an administrative hearing to review the revocation decision. (Exh. G–3.) The ATF set the matter for administrative hearing before Hearing Officer Darlene Brown in Tuscaloosa, Alabama on November 13, 2002. (Exh. G–4.)[7] Apparently by choice, Willingham was not represented by counsel at the hearing; rather, Mr. Willingham spoke for the company.[8]

During the administrative hearing, Mr. Willingham readily conceded that record-keeping errors had been made.[9] When asked whether he disputed any violations reported in the inspections, other than one minor exception, Mr. Willingham answered negatively. (Tr. 142.) By way of explanation, however, Mr. Willingham stated during the hearing that "a lot of it is human error" and that "[i]t was not just flat not wanting to do my job. It was just too many people trying to help. . . . And that's where my forms were getting all messed

up." (Tr. 96, 98–99.) However, Mr. Willingham hastened to add that the company had taken corrective actions to vest responsibility for the paperwork in a single person (his father) and to eliminate the errors discovered during the 2001 inspection. (Tr. 12–13, 96–99.) He also explained that Willingham had remedied its previous procedures of accepting firearms for servicing, cleaning, and the like without logging them into the Bound Book. (Tr. 108–09.)[10] Mr. Willingham also presented evidence of a system of checks and balances instituted by the company following the 2001 violations to verify that paperwork is completed properly, that inventory is taken on a regular basis, and the like. (Tr. 110–15.) Thus, according to Mr. Willingham, the company's procedures were admittedly faulty as of the 2001 inspection, but have since been remedied. In his closing argument, Mr. Willingham apologized for the company's errors, but assured the hearing officer that "[w]e've got it under control that we know exactly what's going on. And we're not going to let this ever happen again." (Tr. 162–64.) He repeatedly characterized the company's

7. As a technical matter, intervening events converted the hearing on revocation of the License into a hearing on denial of Willingham's application for renewal of such License. The License expired on April 1, 2002, and Willingham timely filed a renewal application, notwithstanding the pending revocation action. The renewal application was held in abeyance pending the results of the administrative proceeding, at which time it was denied. Given that procedural posture, the technically correct formulation of the challenged administrative action is the denial of Willingham's renewal application for the License, rather than the revocation of the License. Nonetheless, the terminology makes no practical difference to these proceedings, and the Court will use both terms interchangeably.

8. In its appeal of the ATF's adverse decision to this District Court, Willingham is repre-

sented by retained counsel. There is no indication in the record as to why Willingham participated in the administrative hearing without the aid of counsel; however, given the paucity of record evidence that any effort was made to secure counsel in advance of that hearing, one can only assume that this was a voluntary strategy on Willingham's part.

9. For example, Mr. Willingham's opening statement included a candid admission that "it's all paperwork. And it's been neglected. And it's our fault." (Tr. 12.)

10. With regard to this omission, as well, Mr. Willingham allowed that "that's my fault" but indicated "that this was not done intentionally. We're not bad people. We're trying to do right. It's just that we've got fifty million things going on." (Tr. 108.)

recordkeeping travails as a "learning process," and insisted that in the last year or two the company had implemented new procedures to rectify the problems. (Tr. 162, 165.)

Following the hearing, the Hearing Officer submitted a Recommendation in which she concluded that Willingham had willfully committed repeat violations of firearms regulations governing Bound Books and Forms 4473. Despite clear notice of these violations and guidance as to how to correct them after each of three prior inspections, the July 2001 inspection revealed numerous recurring violations. The Hearing Officer recommended that a final notice of revocation of License be issued to Willingham, reasoning as follows:

"In view of the fact that the licensee has been inspected a considerable number of times and has had ample opportunities to conduct business in accordance with requirements, it would not appear to be prudent on the part of the Government to allow a licensee to stay in business another 10 or 15 years when such a long history of noncompliance is demonstrated. Proper maintenance of these records is one of the fundamental requirements of a Federal firearms licensee."

(Recommendation of Hearing Officer, at 16.) [11]

On December 31, 2003, the ATF's Director of Industry Operations in the Nashville Field Division entered final administrative findings of fact and conclusions of law. The Director found that Willingham had repeatedly violated recordkeeping requirements for more than a decade, and had failed to conform to those requirements despite actual knowledge of both the existence of those requirements and its own noncomplaint status. The Director

further found that all five violations charged in the initial Notice of Revocation were sufficiently proved at the administrative hearing, and that such violations were willful, inasmuch as Willingham "knew of its legal obligation and purposely disregarded, or was plainly indifferent to the requirements." (Director's Findings of Fact and Conclusions of Law, at 13.) In light of these findings and conclusions, the Director formally denied Willingham's renewal application for the License. (Id. at 16.) Willingham now appeals the Director's decision.

## II. Standard of Review.

### A. General Principles of Section 923(f)(3) Review.

As mentioned, this case is an appeal from the ATF's decision to revoke Willingham's firearms license and to deny its application for a new license. The right to appeal this administrative decision to federal court is governed by 18 U.S.C. § 923(f)(3), which provides that one whose license has been revoked or whose application has been denied may

"File a petition with the United States district court for the district in which he resides or has his principal place of business for a de novo judicial review of such denial or revocation. In a proceeding conducted under this subsection, the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing."

Id. If the district court finds that the ATF was not authorized to deny or revoke a petitioner's license, then "the court shall order the Attorney General to take such

---

11. In support of this conclusion, the Hearing Officer reasoned that recordkeeping violations such as those at issue here might compromise law enforcement's efforts to trace

firearms and might also enable prohibited persons to receive firearms from Willingham. (Id.)

action as may be necessary to comply with the judgment of the court." *Id.*

■ Thus, under § 923(f)(3), Willingham is entitled to a *de novo* judicial review of the ATF's decision in federal district court. Case authorities make clear that the *de novo* standard of review means that the ATF's decision is entitled to no presumption of correctness and that the district court may attach such weight, if any, as it deems appropriate to the ATF's determinations and decision. *See, e.g., Stein's, Inc. v. Blumenthal,* 649 F.2d 463, 467 (7th Cir.1980) (explaining that under *de novo* standard of review in firearm licensing cases, "the trial court need not accord any particular weight to the Secretary's findings and decision," but that "it may, in the exercise of its discretion, accord them such weight as it believes they deserve"); *3 Bridges, Inc. v. United States,* 216 F.Supp.2d 655, 657 (E.D.Ky. 2002) (ATF's "administrative decision is not clothed in this Court with any presumption of correctness"); *Weidner v. Kennedy,* 309 F.Supp. 1018, 1019 (C.D.Cal. 1970) (same).[12]

■ Nonetheless, that the Gun Control Act provides for *de novo* review of administrative decisions is not to vest a firearms dealer with an absolute right to an evidentiary hearing in appealing from an adverse ATF decision. Case law is to the contrary. *See DiMartino v. Buckley,* 19 Fed.Appx. 114, 115, 2001 WL 1127288, *1 (4th Cir. 2001) ("*DiMartino II*") (before an evidentiary hearing is appropriate, "[a] good reason to hold such a hearing must either appear in the administrative record or be presented by the party petitioning for judicial review"); *Perri v. Department of Treasury; Bureau of Alcohol, Tobacco and Firearms,* 637 F.2d 1332, 1335 (9th Cir. 1981) (district court did not abuse discretion in ruling on appeal from ATF administrative decision without evidentiary hearing, where court expressed intention to avoid repetitive hearing and afforded both sides an opportunity to submit new evidence).

■ What is required, however, is that the district court allow the parties an opportunity to present additional evidence, irrespective of whether such evidence was presented at the administrative level of not. Indeed, "petitioners can properly supplement so long as the evidence meets the other requirements of relevancy and admissibility under the Federal Rules of Evidence." *Trader Vic's Ltd. v. O'Neill,* 169 F.Supp.2d 957, 961 (N.D.Ind.2001) (expressing concern with ATF's misstatement of law that evidence outside administrative record could not be considered, when 1986 amendment to § 923(f)(3) is plainly to the contrary); *see also 3 Bridges,* 216 F.Supp.2d at 657 (pursuant to *de novo* review of ATF decisions, "the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the hearing"); *T.T. Salvage Auction Co. v. Secre-*

---

**12.** The Gun Control Act's scheme of *de novo* review in federal court appears to be an inefficient use of judicial and administrative resources. Because no deference must be accorded to the administrative proceedings, such a system breeds redundancy and fails to leverage the agency's expertise in any meaningful way. It also lacks the virtue of uniformity, as this standard allows district courts to decide in an *ad hoc* manner whether they wish to afford weight to the administrative decision and, if so, how much. Nonetheless, Congress's intent, as set forth in the Gun Control Act and interpreted by the above and other authorities, appears to have been just that, and the Court will proceed accordingly. To the extent that the ATF argues that the federal court must uphold the agency decision as long as there is substantial evidence to support it (*see* Reply Brief, at 4), the Court cannot agree, as such a formulation would contravene the *"de novo"* statutory language and case authorities that have held otherwise.

*tary, U.S. Dept. of Treasury,* 859 F.Supp. 977, 979 (E.D.N.C.1994) ("Pursuant to 18 U.S.C. § 923(e), on a de novo review the court may consider any evidence submitted by the parties to the proceeding whether or not such evidence was considered at the revocation hearing."); *DiMartino v. Buckles,* 129 F.Supp.2d 824, 827 (D.Md.2001) (*"DiMartino I"*) ("The reviewing court can consider any evidence submitted by the parties regardless of whether that evidence was submitted in the administrative proceeding.").[13] There is no disconnect between the ability of parties to present additional evidence and the lack of an automatic right to an evidentiary hearing. As one appeals court explained, a trial court admitting additional evidence "may cho[o]se to receive the evidence in the form of affidavits rather than testimony, at least in those cases in which no substantial credibility questions are presented." *Stein's, Inc.,* 649 F.2d at 466 n. 5.

### B. Summary Judgment Standard.

■ Notwithstanding the posture of this action as an appeal from an ATF administrative decision, the summary judgment standard is unchanged. Just as in other kinds of disputes, "[a] district court may grant summary judgment when reviewing a firearms license revocation pursuant to 18 U.S.C. § 923(f)(3), provided no issues of material fact are in dispute." *DiMartino II,* 19 Fed.Appx. 114, 115, 2001 WL 1127288, at *1 (citing *Cucchiara v. Secretary of Treasury,* 652 F.2d 28, 29–30 (9th Cir.1981)); *Sturdy v. Bentsen,* 129 F.3d 122, 1997 WL 611765, *1 (8th Cir.1997) (same). Where a plaintiff fails to come forward with genuine issues of material fact in a § 923(f) appeal, it is unnecessary

to hold an evidentiary hearing before ruling on a Rule 56 motion. *See Breit & Johnson Sporting Goods, Inc. v. Ashcroft,* 320 F.Supp.2d 671, 673 (N.D.Ill.2004) ("Absent genuine issues of material fact, a court may properly grant summary judgment without an evidentiary hearing."); *DiMartino I,* 129 F.Supp.2d at 827 ("The reviewing court can grant summary judgment without conducting an evidentiary hearing if no genuine issues of material fact exist."); *T.T. Salvage,* 859 F.Supp. at 979 ("when it is clear that there are no genuine issues of material fact, the granting of summary judgment is proper without conducting an evidentiary hearing").

As one district court has explained, "summary judgment is available under Section 923(f)(3) and may be appropriate if material facts developed at the administrative hearing, which the court also concludes justify nonrenewal, are not refuted or challenged by proper counter-affidavits filed pursuant to Rule 56." *Fin & Feather Sport Shop, Inc. v. U.S. Treasury Dept., Internal Revenue Service, Bureau of Alcohol, Tobacco and Firearms,* 481 F.Supp. 800, 807 (D.Neb.1979) (citation omitted); *see also 3 Bridges,* 216 F.Supp.2d at 657 (summary judgment may be granted on basis of administrative record when facts developed at administrative hearing sufficient to justify non-renewal are not substantially drawn into question by party seeking review).

### III. Analysis.

■ Pursuant to 18 U.S.C. § 923(e), the ATF may revoke a firearm dealer's license if the dealer willfully violates any statute or regulation governing the firearm indus-

---

**13.** The ATF urges this Court not to consider any evidence in addition to the administrative record. (Defendant's Brief, at 14–15.) For its part, plaintiff seeks to supplement the administrative record with excerpts from Mr. Fleischmann's deposition. (Opposition Brief,

at 4.) In light of the foregoing authorities, as well as the clear relevance of Mr. Fleischmann's deposition testimony, the Court will admit and consider such information as part of the summary judgment record herein.

try. Willfulness is a prerequisite to the ATF's revocation authority. Nonetheless, where a willful violation exists, even "a single violation is sufficient for . . . revoking a license." *DiMartino I*, 129 F.Supp.2d at 827; *see also Trader Vic's*, 169 F.Supp.2d at 963 ("Any single violation of the federal statutes or regulations controlling the firearms industry can be a basis for denying an application for a new license or revoking an existing license.").

In this action, Willingham asks this Court to deny the ATF's Motion for Summary Judgment for three reasons. First, Willingham argues that genuine issues of material fact preclude summary judgment because some of the purported violations may not be violations at all. Second, it asserts, there are genuine issues of material fact as to whether Willingham's violations were "willful." Third, Willingham maintains that summary judgment is inappropriate because fact questions remain as to the propriety of the sanction selected by the ATF. (Opposition Brief, at 1.) The Court will address each of these arguments in turn.

### A. Questionable Nature of Certain Violations.

In its opposition brief, Willingham identifies several categories of charged violations that it believes may not run afoul of applicable regulations. For instance, Willingham points out that certain of the violations for which it was cited in the July 2001 inspection related to guns held by Willingham for cleaning or repairs, rather than resale, and questions whether the Bound Book log-in and log-out requirements apply to such items. (Opposition Brief, at 5.) Likewise, Willingham cites Mr. Fleischmann's deposition for the proposition that certain violations cited in the 1990 inspection are too vaguely described in the documentation to be identified with precision. (*Id.* at 6.)

This argument is a nonstarter. At the administrative hearing, Mr. Willingham candidly and consistently acknowledged that Willingham had been in violation of the pertinent firearms regulations in virtually every respect cited in the Reports of Violations relating to each inspection. For instance, at the outset of the hearing, Mr. Willingham admitted that Willingham had "neglected" the required paperwork and that "it's our fault." (Tr. 12.) Later, he allowed that "this thing has gotten out of hand. And I apologize for it getting out of hand," referring to the recordkeeping violations. (Tr. 164.) When asked point-blank whether he disputed any items recited in the Reports of Violation prepared for each inspection, with one minor exception, Mr. Willingham answered in the negative. (Tr. 142.) On this record, Willingham cannot credibly contend that it was not in violation of the federal firearms regulations, as reported by the ATF following the 1990, 1992, 1999 and 2001 inspections. At most, Willingham's evidence on summary judgment calls into doubt a small percentage of those violations. Given that the overwhelming majority of the charged violations are undisputed and unchallenged, and that case authorities confirm that even a single violation is sufficient to warrant revocation of a firearms license, Willingham cannot avert summary judgment on this basis. *See generally Prino v. Simon*, 606 F.2d 449, 451 (4th Cir.1979) (determination of willful violation was amply supported by evidence, despite dealer's protestations of non-violations in certain instances, where there was no dispute that some violations cited in each inspection had indeed occurred); *3 Bridges*, 216 F.Supp.2d at 659 (granting summary judgment for government, even though petitioner contested certain violations, where other violations were admitted, such that disputed violations could not create issue of material fact).

As a fallback position, Willingham urges the Court to find that certain violations, such as instances where a purchaser wrote "Y" in lieu of "Yes" and "N" in lieu of "No," are "nit-picky" and not serious violations. (Opposition Brief, at 6.) This is not a valid basis for avoiding judgment as a matter of law. It is not the place of Willingham or any licensee to decide unilaterally which federal firearms regulations are sufficiently importunate to follow and which may be disregarded as "nit-picky." Nothing in the Gun Control Act or the accompanying regulations exonerates licensees from complying with "nit-picky" rules or trammels the ATF's authority to revoke licenses for willful violations of "nit-picky" rules.[14] Moreover, Willingham's emphasis on ostensibly insubstantial infractions ignores the undisputed fact that both the 1999 and the 2001 inspections disclosed that literally dozens of firearms had passed through Willingham's doors without being accounted for in the Bound Book. There were guns that had been logged in and sold, but not logged out; guns in inventory that had never been logged in; and guns that Willingham had acquired and sold to purchasers without recording either the acquisition or the disposition. With regard to Forms 4473, there were dozens of instances in which Willingham had failed to record identification numbers for purchasers, had allowed purchasers to leave certain eligibility questions blank, and the like. Clearly, these are not *de minimis*, inconsequential, "nit-picky" violations, and any

effort by Willingham to characterize them as such is misguided.

In short, it is undisputable that Willingham repeatedly and substantially violated federal firearms licensee recordkeeping requirements in a series of inspections between 1990 and 2001.

## B. Willfulness.

The true battleground on ATF's Motion concerns the "willfulness" element. Without a willful violation, the ATF lacks authority to revoke or nonrenew Willingham's license. As stated above, there is no reasonable room for doubt that Willingham in fact violated ATF recordkeeping requirements over an extended period of time. Thus, in this case, like most other appeals of ATF administrative decisions, the outcome turns on the willfulness of those violations.

In the context of federal firearms licensing cases, the willfulness element "is established when a dealer understands the requirements of the law, but knowingly fails to follow them or was indifferent to them." *Perri*, 637 F.2d at 1336; *see also 3 Bridges*, 216 F.Supp.2d at 657 (same); *Trader Vic's*, 169 F.Supp.2d at 963 (willful violation of Gun Control Act is established if a dealer knows proper requirements and acts in contravention of them, even without evil motive, if in careless disregard of statutory requirements); *Sturdy*, 129 F.3d 122, 1997 WL 611765, at *2 (willfulness is shown where ATF proves that dealer

---

14. To the contrary, the gravity of the policy objectives of the Gun Control Act, from both a law enforcement standpoint and a safety standpoint, strongly militates in favor of allowing the ATF to insist on total compliance as a condition of retaining the privilege of dealing in firearms. Indeed, the Supreme Court has noted that one purpose of the Gun Control Act is "to keep firearms away from the persons Congress classified as potentially irresponsible and dangerous." *Barrett v.*

*United States*, 423 U.S. 212, 218, 96 S.Ct. 498, 46 L.Ed.2d 450 (1976). Where a dealer does not properly maintain ATF records to the agency's exact specifications, the ATF's ability to fulfill its legislative mandate may be compromised. *See 3 Bridges*, 216 F.Supp.2d at 659. If ever there were a statutory scheme where a licensee should be obligated to "sweat the details," irrespective of how trifling they may appear, the Gun Control Act would appear to fit that bill.

"knew of the legal record-keeping requirements and 'purposefully disregarded' or was 'indifferent to' them"). No evidence of bad purpose or evil motive need be adduced before a license may be revoked or a renewal application denied. *See Sturdy*, 129 F.3d 122, 1997 WL 611765, at *2; *Stein's, Inc.*, 649 F.2d at 467.

Courts have routinely found sufficient evidence of willfulness, as a matter of law, where a licensee engaged in repeated violations after being advised of recordkeeping defects by ATF inspectors on prior occasions. For example, where the ATF had on numerous occasions pointed out deficiencies in the licensee's recordkeeping, and had given the licensee guidance in applicable law and recordkeeping requirements, the licensee's continued failure to maintain proper records demonstrated that it "was plainly indifferent to the recordkeeping requirements" and therefore established a willful violation justifying denial of a renewal application. *Fin & Feather*, 481 F.Supp. at 807.[15]

■ Here, the evidence of willfulness is overwhelming, just as it was in *Fin & Feather*. As of July 2001, Willingham had been a licensed firearms dealer for 14 years. Willingham knew that the firearms industry was heavily regulated, and that its ability to maintain its License hinged on its strict compliance with applicable rules and regulations. Willingham had received periodic written materials from the ATF for many years, explaining its recordkeeping obligations and keeping it abreast of evolving forms and procedures. Willingham understood that it was responsible for knowing the contents of those materials, and abiding by them in the course of its firearms activities. Willingham had received Reports of Violation documenting a litany of violations relating to the Bound Book and Forms 4473 in 1990, 1992 and 1999. In each instance, Willingham's president had signed the Reports and had been given an opportunity to discuss them with an ATF inspector. In conjunction with the 1999 Report, an ATF inspector reviewed a Federal Firearms Regulations Guide Form with Willingham's president. This form listed numerous firearms regulations (including recordkeeping requirements). When Willingham's president signed that form on December 2, 1999, he acknowledged that the ATF inspector had explained those regulations to him and had given him an opportunity to ask any questions he might have. A short time later, Willingham received a Warning Letter reminding it of the severity of the 1999 violations, and admonishing it that repeat violations might result in revocation of its License.

---

**15.** The *Fin & Feather* scenario represents a common fact pattern that has played out in numerous cases, all with the same results (*i.e.*, a judicial determination of willfulness). *See Breit & Johnson*, 320 F.Supp.2d at 679 (history of repeated violations and multiple warnings is sufficient to establish that dealer willfully violated ATF's recordkeeping requirements); *Cook v. Herbert*, 2004 WL 40525, *2 (W.D.Va. Jan. 5, 2004) (dealer's failure to record disposition of firearms and to correct errors in bound book after notice by ATF of errors cannot be characterized as mere inadvertence, but clearly establishes intentional violation of known legal duty); *also Prino*, 606 F.2d at 451 (determination of willfulness was amply supported where repeat inspections revealed multiple, overlapping violations, certain of which were undisputed); *3 Bridges*, 216 F.Supp.2d at 659 (willfulness standard satisfied, where petitioner admitted certain violations, had 10 years experience as a licensed dealer, was well-versed in Form 4473 and bound book requirements, and was repeat offender); *T.T. Salvage Auction*, 859 F.Supp. at 980 (finding it clear that violations were willful where plaintiff understood ATF requirements, plaintiff was inspected three times, ATF gave plaintiff every chance to come into compliance, and plaintiff simply did not do so).

Yet, despite extensive knowledge of the legal requirements it faced, its poor history of compliance, and the ATF's gradually less accommodating stance towards its persistent violations, Willingham did not bring its recordkeeping practices into compliance with the law. When an ATF inspector knocked on Willingham's door in July 2001, there continued to be numerous errors in the Bound Book and the Forms 4473. Firearms were unaccounted for or never logged in. Critical purchaser data was omitted. Willingham cannot credibly plead ignorance of these requirements. Yet, more than a decade after the first violations were brought to its attention, Willingham had failed to raise its records protocols to acceptable levels. Under the circumstances, the *only* inference that this record will admit is that Willingham purposely disregarded or was indifferent to its recordkeeping obligations under the Gun Control Act between November 1999 and July 2001.

In a last-ditch effort to withstand summary judgment, Willingham argues that it took corrective action after the July 2001 inspection, altering its business practices and procedures to resolve the problem. (Opposition Brief, at 4–5.) The record supports Willingham's contentions in this regard, demonstrating an internal system of checks and balances implemented after the July 2001 inspection to eradicate or at least minimize future violations. Unfortunately for Willingham, evidence that it reformed its business practices *after* the July 2001 inspection is not probative as to whether violations observed in that inspection were willful. *See T.T. Salvage,* 859

F.Supp. at 979 (rejecting evidence of corrective action taken subsequent to last inspection as irrelevant because (a) statute focuses on willfulness as of the time the violations occur, and (b) consideration of such evidence would prevent ATF from ever revoking licenses because licensee could recover license simply by coming into compliance before judicial review); *Sturdy,* 129 F.3d 122, 1997 WL 611765, at *2 (agreeing with district court that after-the-fact efforts to correct violations revealed in inspection are irrelevant to issue of willfulness at time errors occurred).

Willingham's remaining attempts to defuse a willfulness finding are similarly unavailing. It is true that there are worse things Willingham could have done, such as selling guns to "straw purchasers," selling guns to convicted felons and the like. (Opposition Brief, at 7.) It is also true that the ATF never found evidence that Willingham was intentionally trying to subvert the firearms purchasing process. (*Id.*) However, these facts do not alter the inescapable conclusion that Willingham carelessly disregarded its recordkeeping obligations under the Gun Control Act for more than a decade, despite actual knowledge of those obligations, even after the ATF repeatedly advised it of violations and the need for compliance. That Willingham may not have been the worst kind of repeat offender is not to exonerate it or to negate willfulness.[16]

In short, on the record before the Court, there is no genuine issue of material fact as to the willfulness of Willingham's violations. Plaintiff unquestionably had actual

---

16. The administrative record reflects that Mr. Willingham appeared quite contrite at the hearing. He admitted that violations had occurred, accepted personal responsibility for the recordkeeping failings, and apologized profusely. Even from reviewing the cold record, the Court has no doubt that Mr. Willingham's apologies were genuine and that he sincerely feels remorse for his company's protracted history of noncompliance with federal firearms regulations. Again, however, his acceptance of responsibility *today* and his remorseful state of mind *today* do nothing to dim the willful nature of the company's recordkeeping violations between 1999 and 2001.

knowledge of its violations and was well-versed in the recordkeeping requirements, yet it persisted in committing dozens of similar recordkeeping infractions after receiving a warning letter and a stern lecture from ATF officials. No reasonable factfinder could conclude on this record that Willingham's conduct falls short of willfulness.

### C. Propriety of Revocation/Nonrenewal.

 Lastly, Willingham asserts that, even if its violations were willful, an evidentiary hearing is needed to assess the propriety of the ATF's sanction of revocation/nonrenewal of the License. (Opposition Brief, at 8.) Such a request exceeds the statutory authority conferred upon this Court by the Gun Control Act. As one district court recently observed, "[u]nder § 923(f)(3), the district court may only determine whether the Attorney General's decision was 'authorized;' the selection of the penalty is a matter within the discretion of the Attorney General." *Breit & Johnson,* 320 F.Supp.2d at 673; *see also Stein's, Inc.,* 649 F.2d at 464–65 n. 2 ("Selecting an appropriate penalty for the violations found is a matter committed to the Secretary's discretion.").[17] Having found that Willingham willfully violated the recordkeeping requirements of the Gun Control Act, this Court lacks authority to revisit the propriety of the sanction selected by the ATF. The relief that Willingham seeks is thus not available, as a matter of law.

### D. Evidentiary Hearing.

 As the foregoing makes clear, an evidentiary hearing is not required in this case, and would serve no useful purpose. Willingham has not offered evidence suggesting that all of the charged violations are inaccurate, and has not offered any evidence differing substantially from that presented to the Hearing Officer. To the contrary, in the administrative hearing, Mr. Willingham admitted the vast majority of the violations attributed to the company. To conduct an evidentiary hearing under these circumstances would be to squander time and resources on an unnecessary duplicate hearing. *See Fin & Feather,* 481 F.Supp. at 807 ("De novo consideration is provided when the court tests anew the justification for license denial. No one is served by trial of immaterial issues or pretense that issues exist which do not."); *see generally Stein's, Inc.,* 649 F.2d at 468 n. 7 ("[T]he practice of the courts has been to grant judgment summarily when the material facts developed at the administrative hearing, which the court also concludes justify nonrenewal are not substantially drawn into question by the party petitioning for review.").

It is no answer to suggest, as Willingham does, that an evidentiary hearing is needed because at the administrative level Mr. Willingham "was inartful in respond-

---

17. The authority cited in Willingham's brief is not to the contrary. To be sure, in *Rich v. United States,* 383 F.Supp. 797 (S.D.Ohio 1974), the district court invoked § 923(f)(3) to direct the ATF to suspend, rather than revoke, the plaintiff's license. *Id.* at 802. However, the *Rich* court expressly found no willful violation. Likewise, in *Shyda v. Director, Bureau of Alcohol, Tobacco and Firearms,* 448 F.Supp. 409 (M.D.Pa.1977), the court held out the possibility of altering the ATF's sanction, but had not yet made any findings as to willfulness. Under § 923(f)(3), "[i]f the court decides that the Attorney General was not authorized to deny the application or to revoke the license, the court shall order the Attorney General to take such action as may be necessary to comply with the judgment of the court." *Id.* Where a willful violation has occurred, the ATF's decision is authorized, as a matter of law; therefore, a district court cannot direct the ATF to impose a lesser sanction in that circumstance.

ing to the Government's case and has unwittingly clouded the record." (Opposition Brief, at 7.) Far from clouding the record, Mr. Willingham's statements at the administrative hearing clarified it considerably by admitting the lion's share of the violations and confirming his knowledge of the recordkeeping requirements and the importance of strict compliance with same. In requesting a hearing, Willingham offers no evidence that would contradict these fundamental admissions or that might otherwise tend to negate their inference of willfulness. No evidentiary hearing need be held.

## IV. Conclusion.

For all of the foregoing reasons, defendant's Motion for Summary Judgment (doc. 18) is **granted** in its entirety. The ATF's final administrative decision entered on December 31, 2003, revoking and/or not renewing Willingham's firearms dealer license is hereby **affirmed**. A separate judgment will enter.